## BROWN *vs.* BURRUS.

1. If several are sued in trespass, and some are acquitted, and others are found guilty, the latter may move for a new trial without being joined in such motion by the former; and the verdict may be set aside as to those found guilty, without affecting the validity of the finding as to the others.

2. Where a person who is a material witness for the defendant, in an action on tort, has been joined with such defendant, and there is no evidence, or slight evidence against him, the jury may find a separate verdict in his favor; in which case, the cause being at an end with respect to him, he may be admitted as a witness for the other defendant.

3. The manner of examining a witness is entirely within the discretion of the court before whom the witness is produced. Material testimony ought not to be rejected because offered after the evidence is closed on both sides, unless it has been kept back by trick, and the opposite party would be deceived or injuriously affected by it. So, after a witness has been examined and cross-examined, the court may, at its discretion, permit either party to examine him again, even as to new matter, at any time during the trial.

4. If a witness is sworn, and gives some evidence, however formal or unimportant, he may be cross-examined in relation to all matters involved in the issue.

5. Where a constable offers in evidence the verdict of a jury summoned "to try the right of property between the defendant in the execution and the claimant," under the 14th, 15th, and 16th sections of 7th article of the act relating to justices' courts, (R. S. 1835, p. 367,) it must appear that the jury were sworn by some person empowered to administer oaths. Although the statute declares, that "the constable shall administer an oath to each of the jurors," &c., yet any qualified officer may administer the oath.

6. Where the claimant of the property levied upon withdraws his claim before the trial of the right of property, the constable is not warranted in proceeding any further with the trial.

7. An execution issued by a justice of the peace is a lien on all the goods and chattels of the defendant in the execution, within the limits of the township to which the execution is directed, from the time of its delivery to the constable.

## APPEAL from Howard Circuit Court.

CLARK *and* KIRTLEY, *for Appellant.*

1. That the court below erred in permitting plaintiff's counsel to re-introduce and re-examine, in chief, Taylor and Duncan, under the circumstances of this case.

—See 3 Chitty's Practice, 901, 2, and note; 1 Stark. Ev., 181; 12 Mod. Eng. R.; 2 Carr & Payne, 121, Giles *vs.* Powell.

2. That the verdict of the constable's jury, finding the property in controversy subject to the executions, was competent and legal evidence in the defence, and was improperly rejected by the Circuit Court.—Statutes of Mo., sec. 14, p. 367.

3. That Col. Davis was sufficiently and properly sworn to answer questions to establish the collateral fact of the notice of Burrus' claim to the negro; and the court erred in considering him as defendant's witness-in-chief, and in allowing plaintiff's counsel to cross-examine him in that character.

4. That the executions in the hands of the constable, as soon as endorsed by him, was a lien on Duncan's personal property within the township, and that the Circuit Court erred in giving plaintiff's first instruction.—See Statutes of Mo., sec. 6, p. 366; sec. 18, p. 256.

5. The Circuit Court erred in overruling the motion for a new trial, for in addition to the above reasons, the damages were clearly excessive beyond the sum remitted, and because Bennett Brown was precluded from the benefit of the testimony of Robert Brown and Ford, material to his defence, by the improper conduct of the plaintiff.—See 6 Bac. Abr., 672; 2 J. J. Marshall, 52, Daniel *vs.* Daniel; 7 Wend., 62, Jackson *vs.* Warford; 6 Mo. Rep., 604, Smith *vs.* Matthews.

Davis *and* Leonard, *for Appellee.*

1. That no new trial can be granted upon the motion of one defendant; that the verdict must be set aside *in toto.* or not at all.—See 2 Tidd's Practice, p. 911; 2 Strange, 814; 3 Salk., 362; 12 Mod., 275; in this edition of Tidd, 329.

2. It is insisted, that the verdict of the jury who tried the rights of property was rightfully excluded from the jury as evidence in the cause, because the jury was not sworn by the constable.—See Revised Statutes of Mo., p. 367, sec. 15 of act concerning justices' courts, title, "Execution."

Where a summary mode of proceeding is given by statute, the statute must be strictly pursued.—See 2 Starkie's Ev., 432, title, "Justices." Otherwise the whole proceeding is void.—See Davidson *vs.* Gill, 1 East, 64.

Again: The evidence in the cause shows conclusively, that had the verdict of the jury who tried the rights of the property been allowed in evidence in this cause, it would have been to permit Brown, the constable, to destroy that very title to the slave Nancy which he himself had been instrumental in creating in the plaintiff, Burrus. It cannot be conceded that an act of the legislature, made for the justification and protection of a public officer, is thus to be made an instrument to shield and protect the officer against his own wrongs.

Scott, J., *delivered the opinion of the Court.*

This was an action of trespass, commenced by the appellee, against Bennett C. Brown, the appellant, Nathaniel Ford, and Robert Brown, for seizing and taking away a negro girl slave, named Nancy. The defendants pleaded Not guilty, and

on the trial Nathaniel Ford and Robert Brown obtained a verdict, and the appellant, Bennett C. Brown, was found guilty, and damages to the amount of $406 assessed against him.

From the testimony preserved in the cause, it appears, that the appellant was the constable of Richmond township, in Howard county, and had several unsatisfied executions in his hands against George Duncan, a resident of said township.

Duncan, by a bill of sale, of a date subsequent to the delivery of the executions to the appellant, sold and conveyed the slave in controversy to the appellee, Burrus. There was testimony conducing to show, that the appellant consented to the sale of the slave to Burrus, on condition that the purchase-money should be paid to William Taylor, a trustee under a deed of trust executed by the said Duncan, and that it should be applied in satisfaction of the claims of the several creditors of Duncan according to the priority of their liens under the trust-deed, and the executions. This fact was controverted by the appellant.

The slave mentioned in the declaration was seized by the appellant, and sold under the executions at public sale. It appeared from the return on the executions in the hands of the appellant, that they were levied on the slave before the date of the bill of sale and her delivery, but the truth of the return was disputed, and evidence conducing to show its falsity was introduced. The appellee claimed the slave before the sale under the executions, and required a trial of the right of property between Duncan, the defendant, and himself, but afterwards, and before the trial, withdrew his claim of property. The appellant, however, proceeds with the trial, and the jury reported a verdict that the slave was the property of the defendant in the execution. The oath to the jurors was administered by William Taylor, who, it does not appear from the record, was authorized to administer oaths. The court below refused to admit in evidence the verdict of the jury. During the trial, the court permitted witnesses to be recalled, and give evidence in chief, who had once been examined and cross-examined. A witness was called by the appellant, merely to prove the fact that the appellee preferred a claim to the slave after the levy was made, and was suffered by the court to be cross-examined, in chief, by the opposite party. Some evidence was given against the defendants, Ford and Brown, in the court below.

At the instance of the plaintiff, appellee, the court instructed the jury that nothing but a levy vested any property in the constable to the slave in controversy, and that a levy is the actual seizing of the property by the officer, under and by virtue of the execution. This instruction was objected to by the appellant, but was given.

On motion of the appellant, the court instructed the jury, that if the constable had executions in his hands against Duncan, which were unsatisfied at the time of the sale of the negro Nancy, such executions were by law a lien upon said negro, as well as Duncan's other property.

The first question raised is, that if several be sued in trespass, and some are acquitted and others found guilty, whether those found guilty can move for a new trial unless those join in the motion who are acquitted? Cases have been referred to in which it has been held this cannot be done. (2 Strange, 814.) The rule

seems to have been a technical one, and not founded in substantial justice. It was a principle, that the jury could not find less than the whole issue before them; if they did, the verdict was bad, and the whole must be set aside. If the issue, whether four are guilty, is submitted to a jury, and two be found guilty, and two acquitted, the verdict as to the two who are guilty cannot be set aside without affecting the validity of the finding as to the other two. This seems to have been the reason of the rule; it is a harsh one, and one by which a plaintiff may prevent a party entitled to a new trial from obtaining it by joining one that he knows will be acquitted, or whom he may have acquitted by withholding evidence against him. When a judgment was rendered against several, and some of them refused to join in a writ of error, the common law provided a mode by which the party who felt himself aggrieved could obtain redress, notwithstanding the obstinacy of those with whom he had been joined.

Why should not a party have a mode of getting rid of an unjust verdict? and why should a plaintiff take advantage of the situation of a defendant, in which he may have been placed by his own contrivance? This rule once prevailed in indictments for misdemeanors, but it is now exploded, and a defendant found guilty may move for a new trial, notwithstanding others who were grieved with him have been acquitted.— See The King *vs.* Mawley, 6 Term R.; The People *vs.* Vermilyea, 7 Cowen, 369.—During the argument of the case cited from Term Reports, Grose, Justice, mentioned a case, in which a new trial had been granted as to one issue out of several.

In the case of Price *vs.* Harris, (25 Eng. Com. Law Rep.,) we find the court relieving the plaintiff of the difficulty in which he was involved by joining too many defendants, by granting a new trial, on condition of paying costs against some of the defendants who were acquitted. If this favor can be extended to a plaintiff who has caused the difficulty by joining too many defendants, how much more should it be allowed to a defendant?

Another point in the cause is, that the court should have granted a new trial, because the appellee, plaintiff below, joined Ford and Brown as defendants, and thereby deprived the appellant of their evidence. Ford and Brown being acquitted, became competent witnesses for the appellant, and he was prevented from examining them by the act of the appellee.

The proper course for a defendant to pursue under these circumstances, if there is no evidence, or if there is slight evidence, is, to have the jury pass on the case, and then introduce him as a witness. It may be inferred, from a departure from this course, that there was probable cause for joining those who were acquitted. The want of all authority in support of the position of the appellant is a strong argument against it. In the case of The People *vs.* Vermilyea, 7 Cowen, it was held, that such testimony is not newly discovered, though the acquitted defendant is now, for the first time, made a competent witness.

It is also assigned for error, that the court permitted a witness who had been examined in chief, and cross-examined, to be again called and examined in chief.

The manner of examining a witness is entirely within the discretion of the court before whom the witness is produced, and that discretion must be governed,

in a great measure, by a knowledge of the character of the witness, and from his demeanor during his examination. A party producing a witness who, whilst deposing, manifests intelligence, candor, and a freedom from all bias for or against either party, would be more liberally indulged than one who introduced a witness who displayed all the opposite qualities.

We have no report of the trial, and there is nothing upon the record to govern this Court, in revising the discretion of the Circuit Court, but simply what the witness deposed. His · conduct, his manner, whether he showed a bias, is altogether unknown, and it would be like the blind attempting to lead those who have light, to interfere in this matter. But, even did we interfere, and reverse the judgment for this cause, how would the party complaining be benefitted by a new trial? Would not the evidence, of the introduction of which he complains, come out in an unexceptionable manner on another trial? In the case of Rucker *vs*. Eddings, 7th vol. Mo. Rep., it is said, the law has entrusted courts with a discretion in allowing the parties to a cause to obviate the effects of inadvertance, by the introduction of testimony out of its order. This discretion is to be exercised in furtherance of justice, and in a manner so as not to encourage the tampering with witnesses, to induce them to prop a cause whose weakness has been exposed. When mere formal proof has been omitted, courts have allowed witnesses to be called, or documents to be produced, at any time before the jury retire, in order to supply it. So, material testimony ought not to be rejected, because offered after the evidence is closed on both sides, unless it has been kept back by trick, and the opposite party would be deceived or injuriously affected by it. So, after a witness has been examined and cross-examined, the court may, at its discretion, permit either party to examine him again, even as to new matter, at any time during the trial. We think these rules are founded in justice and reason, and see no cause for departing from them.

Another point made by the appellant is, that a witness who was introduced to prove a single insulated fact, the mere giving notice of the claim of the right of property in the slave, was suffered to be cross-examined in chief by the opposite party. The question involved in this point has been settled by this Court, in the case of Page *vs*. Kauky, 6th vol. Mo. Rep., where it was held, that if a witness is sworn and give some evidence, however formal or unimportant, he may be cross-examined in relation to all matters involved in the issue.

It is next objected, that the court erred in refusing to receive in evidence the verdict of the jury summoned by the appellant, to try the right of property between the defendant in the execution, and the appellee, Burrus.

It does not appear, that the jurors who rendered the verdict were sworn at all; it is stated on the record, that they were sworn by William Taylor, but it does not appear that he was empowered to administer oaths. In proceedings of this kind, if we consider the officers entrusted with their conduct, the utter inability of obtaining a formal accuracy is easily perceived. This cannot be expected; and if the law is substantially complied with, it is satisfied. Although the statute is imperative, that the constable shall administer the oath, yet we can see no reason why it should be so construed as to prevent any qualified officer from administer-

ing it. There are instances in the books in which the word *shall* has been construed as if written *may.* Immediately after the direction, that the constable shall swear the jury, it is declared, he may administer the oath to the witnesses. Can we believe it was the intention of the legislature, that the constable, and nobody else, should swear the jury, and that he or any other qualified officer might administer the oath to the witnesses?

It was foreseen, that it would frequently happen in such trials, that an officer, other than the constable, could not be had to admister oaths; to obviate this, the constable himself was empowered to perform this act, and we do not consider that he is prohibited from employing another officer to do it. Inasmuch as it does not appear that the jury was sworn at all, we are of opinion, the verdict was properly rejected as evidence; this was a matter of substance, and its omission vitiated the whole proceeding. The claimant, it appears, before the trial, withdrew his claim of property; and it is contended, that having done so, the constable was not warranted by law in proceeding any further with the trial, and a verdict obtained after such withdrawal would be no protection against the suit of the claimant. We can perceive nothing in the law which compels a party, after he has demanded a trial of the right of property, to persist in that demand. He may, or may not, at his own option, interpose his claim; he is under no obligation to do so, and if he will withdraw it before the commencement of the trial, we see nothing to prevent him.

In these trials, constables frequently have an interest against the claimant. Whether he receives his commission or not, will sometimes depend on the verdict. If the claimant is permitted to withdraw his claim when not satisfied with the fairness of the conduct of the officer, it will be some corrective to the evils incident to this mode of proceeding.

The last point made in the cause is, that the court gave contradictory instructions to the jury; instructing them first, at the instance of the appellee, that nothing but a levy vested any property in the constable to the slave in controversy, and afterwards instructing them, (without withdrawing the first instruction,) that if the constable had executions in his hands against Duncan, which were unsatisfied at the time of the sale of the negro Nancy, such executions were by law, a lien upon said negro, as well as Duncan's other property.

It is the duty of the court to give the law applicable to the case to the jury, especially when required so to do at the instance of a party. This duty must be exercised in such a manner as not to mislead or confound the jury. The two instructions set out above could not both be law; one or the other should have been rejected; and the fact of one being posterior in point of time to the other, is no withdrawal of the first, unless it is expressly so declared. It will become necessary to determine which of these instructions should have been given, or in other words, whether an unsatisfied execution in the hands of a constable is a lien upon the goods and chattels of the defendant in the writ? It is contended, that the general law on the subject of executions, 18th section, giving, or rather restricting the lien, to the time of the delivery to the officer, is only applicable to executions issuing from the courts of record; that statutes relative to proceedings

of courts of record are not to be construed so as to extend to courts of limited and inferior jurisdiction; and that there are some provisions of the execution law which are by express enactment made applicable to justices' courts, which raises an implication that others were not designed so to be. It may be remarked, that some of the provisions of the execution law have always been held applicable to executions from justices' courts. There is nothing in the law relative to those courts which exempts any property of the defendant from execution, yet it has never been questioned, that property exempt by the general law relative to executions is also exempt from levy and sale under executions issuing from justices' courts.

Even should the general law be construed as not extending to executions from justices' courts, we are not clear, that by the common law the lien of the execution would not still exist. The 18th section of the act concerning executions does not give the lien; it limits its extent.

By the common law, an execution was a lien from its teste on all the goods and chattels of the defendant, within the limits of the county to which it was directed. It may well be, that the legislature, considering the shortness of the time between the teste and return of an execution, issuing from a justice's court, intended that the common law, as regards them, should still remain in force. Why is the constable required to note the time of the delivery of the execution, if it was not intended that the writ first delivered should be first satisfied? It is said, that by the law the sheriff was required to satisfy, before all others, the execution first coming to his hands, but does not that requisition take its origin in the lien conferred by the execution?

The case of Wylie *vs.* Hyde, 13 J. R., has been cited in support of the position, that an execution in the hands of a constable, before an actual levy, is no lien on the goods of the defendant. The court, in the case cited, did not deny the existence of the lien prior to the levy, on general principles, but inferred its non-existence from its incompatibility with other statutory provisions, leaving us to infer, that but for that incompatibility it would prevail. The extents of the jurisdiction of justices' courts would disincline us to the opinion, that the legislature intended taking away the lien of the execution.

Why should the suitors of some courts have so great an advantage over others? The practical construction of the law has been, that the lien existed from the delivery of the writ to the constable.

The law, as has been observed, requires the constable to note the date of the delivery, by an endorsement on the execution. If several executions come to the hands of a constable at different times, and they are levied at the same time, and the property of the defendant is insufficient to satisfy them all, they are not paid *pari passu*, but the execution first delivered is first satisfied. Why is this done, if the execution is no lien? Will it be said, that the bare delivery of an execution to a constable gives a party the priority over an execution subsequently delivered, although both may be levied at the same time, and it is the levy that creates the lien? If the levy alone gave the lien, then it would seem, all executions levied at the same time would be paid *pari passu*. Rights have

been conferred and titles acquired under the impression, that an execution in the hands of a constable is a lien on the goods of the defendant from the time of its delivery; and we are of the opinion, that the jury should have been instructed that the execution was a lien on all the goods and chattels of the defendant in the execution, within the limits of the township to which the execution was directed, from the time of its delivery to the constable.

Judgment reversed, and cause remanded for a new trial.

TOMPKINS, *Judge.*—I concur in the opinion of the Court reversing the judgment, but it is my opinion that a party who demands a trial of the right of property in the possession of the constable has no right, by declining to proceed in the trial, to deprive the constable of the benefit which the statute holds out to the constable by such trial, and that the constable, for his own security, may still go on and try the right.