Whedon *v.* Champlin.

————•◦•————

· WHEDON *vs.* CHAMPLIN and others, Executors, &c.

A married woman, having a separate estate, may purchase a boat and carry on the business of boating, on her sole and separate account.

There is nothing in the statute which limits the kind of business which a married woman may carry on. That is a matter of taste, and not of statute regulation.

Nor is there any prohibition against her employing her husband as master or captain.

Creditors have no lien on his labor; nor is there any way by which they can force him to labor for them.

He may give his labor to a third person for his board, washing and clothing, and the creditors have no way to prevent it.

So he may give his labor to his wife, upon the same terms.

After he has acquired property by his labor, his creditors may follow it; and if he has invested it in the name of his wife, or expended it to enhance the

Whedon *v.* Champlin.

value of her separate property, a resulting trust may arise in their favor, to the extent of the moneys or property thus invested.

The question in all cases of this class is one of fraud; and like other kindred questions must be submitted to the jury, either when the evidence is conflicting, or when the circumstances are of such a character as to create doubt or uncertainty.

An execution against the husband was levied upon a canal boat, and his wife joined in a receipt to the sheriff. The execution was subsequently paid. Another creditor of the husband afterwards issued an execution, which was levied upon the same boat. *Held,* that the wife was not estopped from showing title to the boat, as against this second execution.

An admission by her to a third person that the boat belonged to her husband, would not be binding as an estoppel in favor of others whose conduct had not been influenced by it.

APPEAL from a judgment of nonsuit ordered at the circuit.

The action was trespass, brought against George H. Champlin for the taking and conversion of the canal boat "Roman." After the trial Champlin died, and the suit is continued against his executors. The plaintiff claimed to own the boat by purchase from his mother, Azuba Whedon, in December, 1861. The defendants claim title through a sale on execution to W. S. Parkhurst, upon a judgment in favor of the Jefferson County Bank, against Alva Whedon, the husband of Azuba Whedon, December 3, 1861. The plaintiffs first levied upon the boat in Oneida county, on its passage with a load of grain to New York city. After it reached the city, another execution was issued to the sheriff of the city and county of New York. No direct evidence was given that the sheriff of New York made a levy on the boat while it was in the city and county of New York, but the plaintiff's proof showed that the sheriff of New York followed the boat to Brooklyn and made sale of her in Kings county.

The main question litigated upon the trial, was whether the boat was liable to execution in favor of the creditors of the husband. The plaintiff's counsel requested the

Whedon *v.* Champlin.

court to submit the question of fraud to the jury, but the judge held and decided, as a matter of law, that the defendant was entitled to a verdict. The grounds of the decision, with the facts necessary to understand them, are sufficiently stated in the opinion of the court.

*S. Van Dusen,* for the appellant.

*C. W. White,* for the respondent.

*By the Court,* MORGAN, J. The case shows that Mrs. Azuba Whedon, the wife of Alva Whedon, the judgment debtor, had separate property which she received after her marriage, to the amount of $1000, from her father's estate, in 1853, and that she expended a portion of it for the support of her family and the purchase of furniture; that she loaned $200 to her husband's brother, which was afterwards invested by her in a house and lot in. Rome; that her husband had a contract for the house and lot, in his own name, of the value of about $400, in 1854; that she then made an arrangement with her husband that she should pay the purchase price, $264, and have the property in her own name; and that she actually paid, of her own money, $200, when the deed was executed to her, leaving $64 still owing and unpaid; that she took the conveyance in July, 1854, and claimed to own the premises ever since, and that she afterwards paid the balance; that her husband paid $75 towards the purchase price, and expended his labor and means to improve the premises to the amount of nearly $200 ; that the house was occupied by his family, and that he probably paid the taxes; that at the time of the arrangement between husband and wife, the husband was not owing debts to any considerable amount; and that the debts against him for which judgments were obtained accrued afterwards; that he failed, in 1857, and has since that time been insolvent.

It also appeared in evidence that he, as the agent of his wife, contracted to have the boat built; that he made the contract in the name of his wife; and to pay for building the boat she mortgaged the house and lot for $800, and borrowed $200 of her son; that the boat, furniture and horses cost over $1500, and that the balance, or the principal part of it, was paid by her from the earnings of the boat; that her husband worked on the boat and run it as master, although she was herself on board, and that she was to allow him $2 a day for his services.

It also appears in evidence that the boat was levied upon at Rome by an execution in favor of Nelson J. Beach, receiver &c., November 11, 1857, while it was on its way to Oswego, and that she and her husband receipted the boat to the sheriff, and afterwards settled the execution.

The judge, among other reasons for granting a nonsuit, held that this act estopped her from asserting a separate title. I doubt whether the learned judge intended to decide such a proposition. As it was one of the grounds on which the defendant's counsel rested for a nonsuit, it has found its way into the case, I think, without his attention being called to it when the case was settled; if indeed the case was ever presented to him at all for settlement. While a receipt, admitting the property to belong to the defendant in the execution, works an estoppel in favor of the sheriff as well as the plaintiff in the same execution, it has never been held, and could not be held, upon any principle applicable to estoppels, that it would thus operate in favor of another execution. The receipt in question does not admit that the property belongs to the husband, and although it might have been invoked to estop the wife from claiming the boat as against the sheriff or plaintiff in that particular execution, it would be very unjust to extend it to other parties. Mrs. Whedon had a right to buy her peace by paying up the judgment, and the receipt given by her was doubtless only

intended for that purpose. It gave her the continued possession of the boat, which at that time of year was in the way of earning a good deal of freight, and enabled her, out of these moneys, to pay up the judgment. It was not intended to be, nor should it be construed into, an acknowledgment that the boat belonged to her husband. Even an admission by her to a third person, that the boat was her husband's, would not be binding as an estoppel in favor of others whose conduct had not been influenced by it.

The principal ground for a nonsuit was that, upon the facts of the case, it appeared that the act of building the boat and obtaining means to pay for it, was not within the license of the statute permitting a married woman to carry on a trade or business on her sole and separate account; and it may also be inferred, from all that was said at the time, that the judge considered the transaction, taken all together, a fraud upon the creditors of the husband, and that the jury could not give it any other interpretation.

But I am of opinion it was competent for Mrs. Whedon to own a boat and carry on the business of boating, on her separate account. There is nothing in the statute that limits the kind of business which a married woman may carry on. That is a matter of taste, and not of statute regulation. Nor is there any prohibition against her employing her husband as master or captain. His creditors have no lien on his labor, nor is there any way by which they can force him to labor for them. He may give his labor to a third person, for his board, washing and clothing, and the creditors have no means to prevent it. Upon what theory is he prevented from giving his labor to his wife, upon the same terms? After he has acquired property by his labor, then the creditors may follow it, and if they can find that he has invested it in the name of his wife, or expended it to enhance the value of her separate property, a resulting trust may arise in

---

Whedon *v.* Champlin.

---

their favor to the extent of the moneys or property thus invested. The question in all this class of cases is one of fraud, and like other kindred questions must be submitted to the jury, either when the evidence is conflicting or when the circumstances are of such a character as to create any doubt and uncertainty.

In the case at bar, the wife had a separate estate, and at the time of the conveyance of the real estate to her, there is no evidence that her husband owed any debts. Considering the sums of money she had expended for the support of her family, and which he was in law bound to furnish, himself, the arrangement she testified to, as to the house and lot, was a very small return for what she had expended; and if the jury believed it was an honest and *bona fide* arrangement to settle the house and lot on her in consideration of what she had expended for him, the transaction would be valid, both at law and in equity, without the aid of the statutes of 1848, 1849 and 1860. The purchase of the boat, and the running of it on her separate account, was authorized by the law above referred to; and since the decision of the Court of Appeals in *Gage* v. *Dauchy*, (34 *N. Y.* 293,) it is clear that the boat could not be seized to satisfy the debts of the husband, unless it was shown that her title was only a colorable and fraudulent one for the purpose of protecting it from his creditors. In my opinion there is very little if any evidence of actual fraud in the transaction. But if there were circumstances tending to prove such a fraud, the question should have been submitted to the jury. For this error of the judge, the judgment should be reversed, without considering the question of the sheriff's authority to follow the property into Kings county.

All concurring, judgment reversed and new trial granted; costs to abide the event.

[ONONDAGA GENERAL TERM, October 5, 1869. *Bacon, Foster, Mullin* and *Morgan*, Justices.]