[No. 1138.]

JANE LAKE, APPELLANT, *v.* C. T. BENDER, ADMINISTRATOR OF THE ESTATE OF M. C. LAKE, DECEASED, RESPONDENT.

NEW TRIAL OF PORTION OF THE ISSUES IN ACTION FOR DIVORCE.—In an action for a divorce and a division of the community property, where a divorce is first granted and subsequently the issues relating to the property are determined, the district court has the power to grant a new trial of the issues relating to the property rights alone; *provided*, there is any material error affecting that branch of the case only, without ordering a retrial of all the issues in the case.

HUSBAND AND WIFE—COMMON LAW—SEPARATE PROPERTY—RENTS, ISSUES AND PROFITS—STATUTE.—In construing the statute defining the rights of husband and wife (Stat. 1864-5, 239): *Held*, that the property rights of the parties to this action, prior to the adoption of the statute, were governed by the common law and that all the property which was owned by the husband at the time of his marriage and all that was subsequently acquired with funds derived from the rents, and profits of such property, or by an exchange of property owned by him at the time of his marriage, is his separate property, and that the rents, issues and profits of his separate estate did not become common property under the provisions of the statute.

IDEM—PROPERTY ACQUIRED DURING COVERTURE—COMMUNITY PROPERTY—PRESUMPTION—BURDEN OF PROOF—EVIDENCE.—The presumption is that all property acquired during coverture belongs to the community, and the burden rests on the person claiming it as separate property to overcome this presumption by proof sufficiently clear and satisfactory to convince the court and jury of the correctness of such claim.

DEED—CONSIDERATION—PAROL EVIDENCE—EXCHANGE OF PROPERTY.—Parol evidence is admissible to show that the consideration of a deed was other property given in exchange, instead of a money consideration as expressed in the deed.

HUSBAND AND WIFE—JOINT EFFORTS—COMMUNITY PROPERTY—EVIDENCE.—It is not necessary to prove that property is the product of the joint efforts of the husband and wife in order that it may be declared community estate. If it is acquired after marriage by the efforts of the husband alone, but not by gift, devise or descent, or by exchange of his individual property, or from the rents, issues or profits of his separate estate, it belongs to the community.

IDEM—PROFITS—SEPARATE PROPERTY.—The profits of separate property which accrue mainly from the property rather than from the joint efforts of the husband and wife, or either of them, belong to the owner of the property although the labor and skill of one or both may have been given to the business; but if the profits come mainly from the efforts of their labor and skill, they belong to the community.

IDEM—TOLL-ROAD—RANCH—HOTEL, PROFITS FROM—SEPARATE ESTATE.—*Held,* upon the facts stated in the opinion, that the rents, issues and profits arising from a toll-road and bridge, a hotel and bar, and the Lake ranch, were the separate property of the husband. (Hawley, C. J., dissenting.)

DIVORCE—ALLOWANCE TO WIFE—DISCRETION OF COURT.—Upon granting a divorce the question as to the amount of allowance for the support of the wife is left to the legal discretion of the trial court, and should not be interfered with in the appellant court, unless the discretion has been abused.

IDEM—CONSTRUCTION OF STATUTE.—Upon rehearing, in construing sections twenty-five and twenty-seven of the act relating to marriage and divorce (1 Comp. Laws, 218, 220) in connection with section twelve of the statute defining the rights of husband and wife (1 Comp. Laws, 162) and a review of the evidence: *Held,* that it was the duty of the district court to allow such sum for the wife's support as was just and equitable under all the circumstances of the case and surrounding of the parties, and that the amount of one hundred and fifty dollars per month, as allowed by the district court, should be increased to two hundred and fifty dollars per month.

APPEAL from the District Court of the Second Judicial District, Washoe County.

*C. S. Varian,* and *Lindsay & Dickson,* for Appellant:

I. All property acquired after marriage by either husband or wife, or by both, except that acquired by gift, be-

quest, devise or descent, is presumed to be community property, and the burden is on that party who would claim it as separate property, to overthrow this presumption. (*Althof* v. *Conheim,* 38 Cal. 230; *Lewis* v. *Lewis,* 18 Cal. 654; *Scott* v. *Ward,* 13 Cal. 458; *Pixley* v. *Huggins,* 15 Cal. 127; *Mott* v. *Smith,* 16 Cal. 533; *Kohner* v. *Ashenauer,* 17 Cal. 581; *Burton* v. *Lies,* 21 Cal. 91; *Adams* v. *Knowlton,* 22 Cal. 288; *Tustin* v. *Faught,* 23 Cal. 241; *McDonald* v. *Badger,* 23 Cal. 398; *Landers* v. *Bolton,* 26 Cal. 420; *Meyer* v. *Kinzer,* 12 Cal. 248; *Smith* v. *Smith,* 12 Cal. 216.) The presumption that property acquired by purchase after marriage is community property, is a cogent one, and can only be overcome by evidence altogether clear and indisputable, showing that the means used in its acquisition belonged to the separate property of the spouse, who claims it as separate estate. (*Chapman* v. *Allen,* 15 Tex. 278; *Love* v. *Robertson,* 7 Tex. 11; *Lott* v. *Keach,* 5 Tex. 394; *Huston* v. *Curl,* 8 Tex. 242; *Gilliard* v. *Chesney,* 13 Tex. 337; 23 Tex. 29; 26 Tex. 196; 25 Tex. 270; 12 Tex. 54; *Schmeltz* v. *Garey,* 49 Tex. 49.)

II. With respect to the funds of the community, the control and management whereof are, by the statute, given into the hands of the husband; and in which the wife has no interest; the relation of the husband to the wife is that of *quasi trustee* to a *cestui qui trust.* The trustee should be held to a strict accountability. If he has mingled the funds of the trust estate with his individual property, so that it can no longer be determined, with any degree of accuracy, whether any particular piece of property was purchased with trust funds, or how much of the purchase money thereof belonged to the trust fund and how much to the individual property of the trustee; if, in short, the trustee himself could not show distinctly and satisfactorily the rights of the two funds, we apprehend there could be no doubt of the right of the *cestui qui trust* to claim the whole of such property. If one intermingle his goods with those of another in such a manner that the property of each can no longer be distinguished, and in such a manner that it

can no longer be determined what proportion the respective parties are entitled to, the innocent party is entitled to the whole. (*Taylor* v. *Jones*, 42 N. H. 25 ; *Root* v. *Bonnema*, 22 Wis. 539 ; 1 Hill. on Torts, 502 ; 2 Kent. Com. 364 ; *Smith* v. *Smith, supra.*)

III. Testimony reviewed at great length and claim is made that it is impossible to say how much of the increase of defendant's property, after marriage, came from the rents, issues and profits of his property, as the profits realized by his skill, labor and industry, and the joint efforts of himself and wife were mingled thenceforth.

IV. That which would be held to be community property in a contest between the wife and creditors of the husband, must also be held to be community property in a contest between husband and wife. The statute does not contemplate one rule for one case and another and different rule for the other. (*De Blanc* v. *Lynch*, 23 Tex. 25 ; *While* v. *Lynch*, 26 Tex. 195 ; *Werner* v. *Kelly*, 9 La. An. 60 ; *Bateman* v. *Bateman*, 25 Tex. 270 ; *Howard* v. *York*, 20 Tex. 670.) As confirmatory of the position that the whole of such increase must be taken to be community property (see 3 C. E. Green, 472; 5 C. E. Green, 13 ; 37 Ill. 247 ; 55 Ill. 354 ; 16 Ohio, 509–521 ; 18 Pa. St. 421 ; *Lewis* v. *Lewis*, 18 Cal. 634).

V. Whether it is permissible to show, by parol evidence, that the deed does not express the true consideration, and that another and different consideration was given, when the effect of such evidence would be, as here, to change the effect and operation of the deed, is at least doubtful. (*McCrea* v. *Purmont*, 16 Wend. 465 ; *Westbrook* v. *Harbison*, 2 McCord, Ch. 112 ; *Ryan* v. *Goodwin*, McMullin Eq. 451 ; *Gullet* v. *Lamberton*, 1 Eng. (Ark.) 109 ; *Sewell* v. *Baxter*, 2 Md. Ch. 454 ; *Notley Young's Est.* 3 Md. Ch. 467 ; *Crawford* v. *Spencer*, 8 Cush. 418 ; *Logan* v. *Bond*, 13 Ga. 197 ; *Cook* v. *Whiting*, 16 Ill. 483 ; *Att'y-Gen.* v. *Clapham*, 31 Eng. L. and Eq. 163 ; *Peck* v. *Vandenberg*, 30 Cal. 11 ; *Salmon Ex.* v. *Wilson*, 41 Cal. 595.)

VI. This case is one, if any there be, where the wife

should have been awarded a sum *in solido*, or where there should have been some division of the property, instead of awarding an annuity—as alimony—based upon defendant's income ; because we find from defendant's testimony that his net income is infinitisimal with his wealth.   The plainest principles of right and justice proclaim that an injustice has been done the plaintiff by the decree herein.   After many years of married life, without fault on her part, she is forced by the wrongs and misconduct of her husband to seek a dissolution of the marriage.   The divorce is granted, but she is turned from the doors of the court with a pittance that is miserably insignificant in comparison with the wealth of the defendant accumulated during the existence of the marriage relations.   Upon the point that the court had authority to divest the defendant of title . to portions of his estate, and that the allowance made by the court is based upon erroneous principles and is entirely inadequate and unjust, the following authorities are cited :   (2 Bish. on Mar. and Div. sec. 481 ; *Thornberry* v. *Thornberry*, 4 Litt. 251 ; *Darrenberger* v. *Haupt*, 10 Nev. 43 ; *Wuest* v. *Wuest*, 17 Nev. 217 ; 1 Comp. L. 218, 220 ; *Burrow* v. *Purple*, 107 Mass. 428 ; *McClung* v. *McClung*, 40 Mich. 493 ; *Donavan* v. *Donavan*, 20 Wis. 586 ; *Williams* v. *Williams*, 36 Wis. 363.)

VII. The district court, finding that respondent, at the time of his marriage, owned a franchise to take tolls, assumed as a matter of law, and so held, that all the tolls received by him during coverture, and amounting to seventy-eight thousand six hundred and twenty-five dollars, were his own separate property, and consequently that all property purchased with such tolls was also his separate property.   The reasoning which leads to such a conclusion is fallacious ; it fails to include the very principle upon which the community system is founded, *i. e.*, that whatever is acquired by the joint efforts of the husband and wife is their common property.   (*De Blanc* v. *Lynch*, 23 Tex. 28.)   The franchise to take tolls was simply a privilege —a right ; its fruits were always necessarily dependent upon

the skill, energy and labor of the owner. The road and bridge were to be kept in repair, the tolls were to be exacted and collected ; the business enterprise and ingenuity of the owner were called in play to divert and keep the travel. Accounts were to be kept—men to be fed and paid. In fact, the successful management of this franchise was a business in itself, requiring the labor of hand and brain—the labor belonging to the community. To this business both spouses contributed, each in his and her appropriate sphere.

VIII. Upon the question of new trial, upon a single issue, we cite 1 Comp. Laws, 1255 ; *Winn* v. *Columbian Ins. Co.* 12 Pick. 279 ; *Bicknell* v. *Dorion,* 16 Pick. 478 ; *Robbins* v. *Townsend,* 20 Pick. 345 ; *Allen* v. *Feland,* 10 B. Mon. 306 ; *Roberts* v. *Heffner,* 19 Tex. 129 ; *Holmes* v. *Godwin,* 71 N. C. 306 ; Hilliard New .Trials, 56, sec. 8.)

*Robert M. Clarke,* for Respondent :

I. The new trial applied for is not of the case, nor of a cause of action in the case, nor of an entire issue ; but of one of several incidental or collateral issues to the cause of action pleaded. A new trial cannot be granted for a part only of the cause of action. (1 Comp. Laws, 1255, 1256 ; Bouviers, L. D. 619 ; *Edie* v. *East India Co.* 2 Burr. 1216, 1224 ; *Swain* v. *Hall,* 3 Wilson 45 ; 1 Blackstone, 198 ; *Dale* v. *Mosely,* 4 Stew. & Por. 371 ; *Edwards* v. *Lewis,* 18 Ala. 494 ; 3 Wait's Pr. 400 ; Tidd's Pr. 911 ; Bicknell's Civ. Pr. 386.)

II. It was admissible to show, notwithstanding the deeds expressed a moneyed consideration, that the real consideration was other property given in exchange. (*Meyer* v. *Kinzer,* 12 Cal. 247 ; *Peck* v. *Brummagim,* 31 Cal. 447 ; *Ramsdell* v. *Fuller,* 28 Cal. 37 ; *Peck* v. *Vandenburg,* 30 Cal. 11 ; *Salmon Ex.* v. *Wilson,* 41 Cal. 595.)

III. The property belonging to the husband at the time of marriage, and all property thereafter acquired by gift, devise or descent, together with the rents, issues and profits, is separate property. ( 1 Comp. Laws, 151 ; *Smith* v. *Smith,*

12 Cal. 216 ; *Martin* v. *Martin,* 52 Cal. 235 ; *Kraemer* v. *Kraemer,* 52 Cal. 302.)　Property received in exchange for separate property is separate.　(Wells Sep. Prop. secs. 75, 117; 50 Ala. 221 ; *Merritt* v. *Lyon,* 3 Barb. 114.)　The proceeds or increase of separate property remains separate. (Wells on Sep. Prop. sec. 112 ; *Williams* v. *McGrade,* 13 Minn. 52 ; *Hansen* v. *Millett* 55 Me. 189 ; *Knapp* v. *Smith,* 27 N. Y. 280 ; *Lewis* v. *Johns,* 24 Cal. 101.)　The rents and profits of a hotel, and crops raised on a farm which is separate property, are also separate.　(Wells on Sep. Prop. etc. sec. 213, p. 169, and cases cited.)　It is immaterial that appellant assisted in managing the separate estate of respondent ; the proceeds are not the less separate property. (Wells on Sep. Prop. etc. sec. 113 ; *Feller* v. *Alden,* 23 Wis. 305 ; *Buckley* v. *Wells,* 33 N. Y. 520 ; *Gage* v *Dauchy,* 34 N. Y. 297; *Dean* v. *Bailey,* 50 Ill. 484 ; *McIntyre* v. *Knowlton,* 6 Allen 566 ; *George* v. *Ransom,* 15 Cal. 323 ; *Lewis* v. *Johns,* 24 Cal. 101 ; *Durham* v. *Williams,* 32 La. An. 162.)

IV.　The allowance of alimony to support appellant is ample.　If hereafter the support should prove inadequate, it may be increased by the district court.　(Bish. Mar. and Div. secs. 429, 430.)

V.　The property being the separate property of respondent, and the divorce having been granted for cruelty, and not for adultery or imprisonment, the court had no power to divest the title out of him and vest it in appellant.　(1 Comp. Laws Nev. sec. 220 ; 2 Bish. Mar. and Div. sec. 427 ; *Maguire* v. *Maguire,* 7 Dana 187 ; *Rogers* v. *Vines,* 6 Ire. 293 ; *Darrenberger* v. *Haupt,* 10 Nev. 43.)

By the Court, LEONARD, J.:

This is an action for divorce on the ground of cruelty. In her complaint plaintiff alleges that there is a large amount of property belonging to the community, and prays for an equal division thereof between herself and defendant. Defendant denies that any of the property described belongs to the community, and alleges that it is all his individual

estate. When the cause came on for trial it was agreed by the respective parties, and ordered by the court, that the issues relating to the disposition of the property should be withdrawn from the consideration of the jury, and reserved for future consideration and determination by the court, in case a divorce should be granted. Upon the special findings and the verdict of the jury the divorce prayed for was granted. Subsequently, the court, sitting without a jury, tried the issues relating to the character and disposition of the property, and found that it belonged to the defendant, individually. Thereupon a formal decree was entered, as follows:

"Upon the verdict of the jury heretofore returned in this case and the order of the court made thereon, and in consideration of said verdict and order, it is adjudged and decreed that the marriage relation heretofore existing between the said Jane Lake and M. C. Lake be, and the same is hereby set aside and annulled, and the said parties be, and they are hereby released therefrom. And upon the findings and decision of the court heretofore made upon the issues joined between the parties concerning the property, * * * it is ordered, adjudged and decreed by the court, that the property, real and personal, described in the complaint, is, and that it be and remain, the separate property of the defendant, M. C. Lake, and that the plaintiff take no part thereof or interest therein except as hereafter specifically decreed."

Then follows an order that the defendant pay plaintiff monthly, so long as she shall remain unmarried, the sum of one hundred and fifty dollars, and fifty dollars for the child, and that said sums be and remain a charge and lien upon certain real property described. In the decree the court reserved jurisdiction to modify the allowance at any time. Defendant did not move for a new trial, or appeal from the judgment or any part thereof. But plaintiff so moved as to the issues respecting the property rights alone. She did not ask for a new trial of the issues touching the alleged cruelty and her right to a divorce. The motion was denied,

and this appeal is from the order denying a new trial, and from "that part of the judgment * * * affecting the questions of alimony and the property rights of the parties to said action."

It is first urged, by counsel for respondent, that a new trial is a re-examination of all the issues of fact raised by the pleadings; that it could not have been granted in this case as to property rights alone; that a motion to retry a part of the case was a nullity, and consequently that the court did not err in overruling the motion made. The question is squarely presented, then, whether the court below had the power to order a new trial of the issues relating to the character and disposition of the property alone, if material error was shown in the trial of, and affecting, that branch of the case only; or, is it true that all the issues made by the pleadings, if any, must have been retried? This question is not only exceedingly important in the matter of practice, but it is also of great moment in the case in hand, if, as claimed by appellant, the court erred in deciding that the property belongs to defendant individually; and, for the purposes of the present discussion, we must assume that the claim of error is well founded. And, too, the legal presumption is that the issues upon the principal branch of the case, the divorce, were tried and determined according to law.

Defendant is presumed to have known the law; and if it is true, as claimed by him, that a new trial could not be had of one part of the case, then he knew that the court could not grant plaintiff's motion, and if he wanted a new trial of the other part, he should have applied upon the entire case. Failing to do so, or to appeal, the presumption is that the divorce was properly granted. On the other hand, if the lower court had the power to grant a new trial of a part of the case, then defendant should have applied also for a new trial of the issues determined against him, and, failing to do so, the presumption is as above stated. It follows, therefore, that we must proceed upon the presumption that the principal issue was tried and

determined without error, and, as to that issue, that there is no cause or ground for a new trial. If it is true that in this case the district court could not grant a rehearing of the issues touching the property rights without disturbing the decision upon the principal issue, then it is certain that in every instance where a new trial is granted the order must embrace the entire case, however distinct the issues may be, and although it may be admitted as to one cause of action that the trial was free from error or exception. For here we have a case where plaintiff must show herself entitled to a divorce before she can claim any separate property rights, and that she has done already. At another trial, before she could ask the court to retry the portion of the case wherein error is alleged, she would be obliged to establish a right which is already determined in her favor without any suggestion of error. She would be obliged to take the risk of defeat at another trial, as to the principal issue, in order to obtain rights incident to those already established. She would have to do over again what is already well done, and then, if successful, establish such property rights as she might have, instead of commencing at the issue, the trial of which alone is claimed to have been affected by error.

Plaintiff applied for a divorce, and a division of alleged common property. There were separate trials however, of the issues presented by the pleadings, those relating to the divorce, by a jury ; and those touching property rights, by the court. The special findings of the jury, adopted by the court, established plaintiff's right to a divorce. The verdict of the jury and the order of the court thereon were complete before the trial fixing the property rights, and if error crept in at the last trial, it could not have affected the result of the first. The trial of the issues relating to the divorce was as unaffected by any errors that occurred at the trial had in relation to the property, as it would have been if plaintiff had filed her bill for divorce, prosecuted it to judgment in her favor, without any showing by either party of the existence of community property, and had

afterwards brought an action to recover her share of such property. That she could have pursued such a course we do not doubt. (*De Godey* v. *Godey*, 39 Cal. 157.) If she had, and the result of the trials had been the same as in this, she could undoubtedly have applied for a new trial in the case relating to the property, without making application also in the other; and yet there would have been just as much reason in that case for a double application, in order that justice might be done, as there is now in requiring her to include in her motion a request for a new trial of the issues relating to the divorce.

It is urged by counsel for respondent that the practice of retrying less than the entire case would result in splitting one cause of action into many parts, thus increasing expenses, multiplying trials, burdening courts, and producing confusion and uncertainty. If these results would follow in a given case, they might be urged against such practice in that case; but the argument does not apply here. In this case, if the decree granting the divorce is correct, what reason can be urged against allowing that to stand, and correcting the balance affected by error? There is none, unless the law prohibits such practice in every case. Suppose the court had found in favor of plaintiff as to both issues—that is to say, had decided that plaintiff was entitled to a divorce, and that the property belonged to the community; that both parties agreed to the correctness of the divorce proceedings and decree, but that defendant, believing the court erred in its decision concerning the property, had applied for a new trial as to that only. In that case plaintiff could not have had cause for, or desired, a new trial of the issues relating to the divorce, because the decision was already in her favor. Would not the defendant have had the right to say: "I concede the correctness of the decree granting a divorce, but the court erred in deciding that the property belonged to the community. I desire a retrial of that question?" Could the plaintiff have opposed the application because it did not include a request for a retrial of an issue already decided in her favor? If such is

the law it ought to be changed, and yet that is the theory of counsel for respondent.

New trials are permitted for the correction of errors, whether they are ordered by the appellate or trial court. Undoubtedly, if an error affects the entire case, a new trial should be granted of all the issues; but when it could not have affected but one of several separate, independent causes of action, or when, as in this case it occurred, if at all, in the trial of an issue not involving the main issue of fact in the case, and the error can be corrected without disturbing the verdict or decision not affected thereby, we think it can be done. The statute provides that in case a divorce is granted the court shall make disposition of the property as therein stated. The division of property is but an incident to, or consequence of, a divorce upon which it depends; but the divorce does not depend upon the property. It is the constant practice of the United States circuit courts, in patent cases, first, to settle the question of infringement, and if, upon that question, the decision is in favor of the complainant, a decree is entered that he shall recover the rents, profits, and damages resulting from infringement. The case is then referred to a master to ascertain the rents, etc., and upon the report coming in it is either confirmed, if satisfactory, or re-referred to correct errors; but the decree settling the rights of the parties upon which the accounting depends is not disturbed. When the master's report is satisfactory, it is added to the partial decree before made.

The statute provides that "upon an appeal from a judgment or order, the appellate court may reverse, affirm, or modify the judgment or order appealed from, in the respect mentioned in the notice of appeal, and as to any or all of the parties, and may set aside, or confirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if necessary or proper, order a new trial." "Under that section," says the supreme court of California, "the appellate court has full power to do, or cause to be done, what, according to the

rules of law and equity, ought to have been done in the lower court, as to any or all of the parties plaintiff or defendant." (*Ricketson* v. *Richardson*, 26 Cal. 155.) If a new trial ought to have been granted by the lower court, the appellate court will reverse the order denying it, and order a new trial. The statute permits this court to grant a new trial. Now, if a new trial necessarily means a re-examination of all the issues made by the pleadings, what power has this court to remand a case for a new trial upon one or more issues, leaving the findings upon the other issues standing? But that has been and is done in California under a similar statute. (*Soule* v. *Dawes*, 14 Cal. 247 ; *Soule* v. *Ritter*, 20 Cal. 522 ; *Marziou* v. *Pioche*, 10 Cal. 545 ; *Jungerman* v. *Bovee*, 19 Cal. 364 ; *Argenti* v. *City of San Francisco*, 30 Cal. 464 ; *Billings* v. *Everett*, 52 Cal. 663 ; *Glasscock* v. *Ashman*, Id. 422 ; *Watson* v. *Cornell*, Id. 91 ; *Le Clert* v. *Oullahan*, Id. 254 ; *Phipps* v. *Harlan*, 53 Cal. 87 ; *Evans* v. *Jacob*, 59 Cal. 628.)

The statute does not provide, in terms, that either this or the trial court may grant a new trial of a part of a case, but it permits both to order a new trial. It does not provide whether the motion shall include the entire case or not. It is evident, however, that the motion should be as broad as the order, but it need not include more. If in this case, the trial court could have granted a new trial upon the second and dependent branch of the case alone, had the motion embraced the whole case, it could have done so upon the motion made. It is idle to claim that the motion must include all the issues, if the court can grant it in part and deny it as to the balance. It would be a vain thing to require the applicant to ask for more than is, or ought to be, granted. If counsel for respondent is correct, had the court below ordered a new trial upon the property issues alone, this court must have reversed the order on appeal therefrom, upon the ground that the trial court had not power to make it, although the appellate court could have made the same order, on appeal by appellant from an order refusing to grant a new trial upon that issue. Unless

the statute so provides, would it not be strange, if a remittitur should go from this court directing a change in a judgment or order, when, had it been so made and entered below, it would have been reversed on appeal? It is true that in *Coombs v. Hibberd*, 43 Cal. 453, it was held that when an application for a new trial has been made in due form, upon a settled statement, and the court has passed on the motion denying it, the court cannot afterwards vacate the order and grant a new trial, although, on appeal from the first order, the appellate court might have reversed it and granted a new trial, as the district court did. The court said the plaintiff could not make two successive motions for a new trial upon identical grounds, and that to vacate the order denying a new trial was equivalent to a renewed motion for a new trial; that the time within which a new trial could be applied for was limited by statute, which would be practically enlarged if a new trial could be granted after it had once been refused. In short, it was held that the district court was prohibited by statute from making its second order for the reasons given. So the same court has held that where the lower court has granted an injunction upon an order to show cause, it cannot afterwards dissolve the injunction, or entertain a motion for that purpose, although the appellate court, on appeal, may reverse the order granting the injunction, and direct it to be dissolved. (*Natoma Water Co. v. Parker*, 16 Cal. 84.)

The ground of the decision was that by statute the privilege of moving for a dissolution upon the filing of the answer, was limited to cases where the injunction was originally granted without notice to the adverse party. It is patent that those decisions do not militate against appellant's views of the law of this case; for here there is not an intimation in the statute that the power of the trial court is not co-extensive with that of the appellate court in the matter of granting new trials. But it is said by counsel for respondent that, under the common law, a new trial could not be granted for a part only of a case, and that the civil practice act provides no different rule, and, consequently, that the com-

mon law rule must prevail.   It is not necessary at this time
to note the many changes wrought by the code as to court
practice.   It is enough to say that they are numerous and
far-reaching.   Artificial forms and rules are abolished and
simple methods adopted, with a view of dealing out justice
between the parties, regardless of any error or defect in the
pleadings or proceedings which shall not affect their sub-
stantial rights.   It is also true that, under the common law
practice, a new trial could not be granted in a civil case at
the instance of one of several defendants.   (*Bond* v. *Spark*,
12 Mod. 275 ; *Berrington's Case*, 3 Salk. 362; *Parker* v.
*Godin*, 2 Strange 813 ;  Bac. Abr. "Trial" L.)

It was held that if the verdict was set aside, the case
must come to trial, just as it did before, against all the de-
fendants.   (*Sawyer* v. *Merrill*, 10 Pick. 18 ; *Brown* v. *Bur-
rus*, 8 Mo. 28.)   The ground of the rule was stated by Mr.
Justice Lawrence in *Rex* v. *Mawbey*, 6 Term R. 640,
where he said :   "Arguments drawn from civil cases are
not applicable, because in those cases there is only one
*venire* on the record and one assessment of damages ; but
that is not so, in criminal cases."

And commenting upon the rule in *Bicknell* v. *Dorion*, 16
Pick. 483, the court said :   "This probably discloses the
ground of the rule in civil cases, when a verdict is set aside,
a *venire facias de novo* is awarded, and no notice is taken of
the first *venire* and the proceedings under it, and there
would be nothing on the record to support the verdict in
favor of those who have obtained one.   *   *   *   But,
however this may be in the English courts, and in those
courts which conform strictly to common law practice, we
have no difficulty here, because, from the earliest times,
we have departed from that practice ; no *venire* is awarded
in making up the record, and the record is made to exhibit
a plain narrative and history of the proceedings as they
occur."

And the court held that it had power to set aside a verdict
as to one defendant without disturbing it where it was in
favor of others, although there was no statute authorizing

such action. Another reason of the rule that a new trial could not be granted of a part of a case, was that every judgment was composed of an entirety of adjudication, and nothing less than the whole could be objected to on appeal or otherwise. But, under the Code, the reason of the rule no longer exists, and consequently, in a proper case, courts are not bound by the rule. (*Lake* v. *Lake*, 17 Nev. 236.) An appeal can be taken from some specific portion of a judgment or order. "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants ; and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves." In *Lake* v. *Lake, supra,* we said : "Under our practice, dissimilar judgments may be pronounced in the same action. For instance, in an action upon two promissory notes, the final determination of the rights of the parties in the action may comprise a judgment in favor of the plaintiff upon one, and against him, and in favor of the defendant upon the other."

Under the present statute of Iowa, a new trial is defined to be "a re-examination in the same court of an issue of fact, or some part or portion thereof, after verdict by a jury, report of a referee, or a decision by the court." The statute also provides that "the former report, verdict, or decision, *or some part or portion thereof,* shall be vacated and a new trial granted on the application of the party aggrieved, for the following causes : * * *" . (Code of Iowa, 1873, sec. 2837.) Section 2849 provides that "every final adjudication of the rights of the parties in an action is a judgment, and such adjudication may consist of many judgments, one of which judgments may determine for the plaintiff or defendant on the claim of either as an entirety ; or, when a claim consists of several parts or items, such judgment may be for either of them on any specific part or item of such aggregate claim, and against him on the other part thereof ; or a judgment may, in any of these ways, determine on the claims of co-parties on the same side against each other."

"Any party who succeeds in part of his cause, or in part of his causes, and fails as to part, may have the entry in such case express judgment for him for such part as he succeeds upon, and against him on the other." (Sec. 2850; and see revision for 1860, section 3121.) These provisions are substantially like ours on the subject of judgments, although our statute does not provide in terms, that a party who succeeds in part, may have the entry express judgment for him for such part as he succeeds upon, and against him on the other part. But the court may undoubtedly instruct the jury to designate upon what issue they find, and also how they find upon each issue (1 Tiff. & S. Pr. 566), and judgment must be entered in conformity with the verdict. In actions tried by the court without a jury, the decision may embrace findings upon each issue, and the judgment must be entered accordingly. Upon the subject of judgments the code of Iowa for 1860 was substantially like that of 1873. It went into effect September 1, 1860. Prior to that time the code of 1851 was in force. The code last mentioned provided that " all final adjudication of civil actions are judgments." (Sec. 1814.) "Judgments may be rendered for or against one or more of several plaintiffs or defendants, or the court, when practicable, may determine the ultimate rights of the parties on each side as between themselves, and give judgment accordingly." (Sec. 1815.)

It will be seen that the sections just quoted are in effect like ours. The only provision that we are able to find in the code of 1851, upon the subject of new trials, is that "motions in arrest of judgment or for a new trial must be made within a reasonable time, and at the term of court at which the trial took place." (Sec. 1808.) Now, in 1859, when the code of 1851 was in force, the supreme court of Iowa, in *Woodward* v. *Horst*, 10 Iowa 120, said : "It may be admitted that, as a general rule, a new trial, when granted, is awarded for the entire case, and that ordinarily, courts will not dispose of a case by piecemeal. And yet, when not attended with too much confusion or incon-

venience, or when it can be done without prejudice to the rights of parties, there is no substantial or valid objection to departing from the general rule. In this case there need be no confusion, and certainly there is no prejudice. Defendant admits, in his answer, both accounts, but pleads in avoidance. The jury found properly that this plea was sustained as to one count, but erred in their finding upon the second count. What purpose is to be gained then, by awarding a new trial as to a part of the case not necessarily depending upon, or connected with the other, and which has already once been properly decided?"

(And see *Dawson* v. *Wisner*, 11 Iowa 8; *Berner* v. *Frazier*, 8 Iowa 77; *Zaleski* v. *Clark*, 45 Conn. 404; *Holmes* v. *Godwin*, 71 N. C. 309; *Merony* v. *McIntyre*, 82 N. C. 106; *People* v. *New York C. P.*, 19 Wend. 118; *Price* v. *Harris*, 25 Eng. Com. Law, 160; *Kent* v. *Whitney*, 9 Allen 65; *Patton* v. *Springfield*, 99 Mass. 635; *Hubbell* v. *Bissell*, 2 Allen 201.)

In *Hodapp* v. *Sharp*, 40 Cal. 69, the action was to recover possession of two distinct quarter sections of land, and for damages for its use. Plaintiff recovered judgment for restitution of both quarter sections, together with two hundred and forty dollars damages. Defendants moved for a new trial, which was denied, and the appeal was taken from the judgment and order denying a new trial. The supreme court decided that as to the south-west quarter the plaintiff was not entitled to recover, and inasmuch as the record did not furnish the data for the apportionment, in respect to the quarter sections, of the damages recovered for the use and occupation of the premises, the judgment would have to be reversed unless such damages should be remitted. It was also ordered "that, upon the plaintiff's remitting such damages, * * * the judgment for the recovery of the possession of the north-west quarter * * * be affirmed; and that the judgment for the recovery of the possession of the south-west quarter of the same section * * * be reversed, and the cause be remanded for a new trial as to the last-mentioned tract of land." If the

damages had been apportioned in the court below, it is plain that the court would have affirmed the judgment as to one tract, and reversed it and ordered a new trial as to the other; and the result would have been that as to one tract plaintiff would have had judgment entitling him to possession, while a new trial would have been had as to the other. Had the damages been apportioned, the court would have ordered a new trial of one cause of action, and affirmed the judgment as to the other. The result in the lower court would have been precisely the same as though that court had granted a new trial as to the south-west quarter and refused it as to the other. The statute says the supreme court may order a new trial; so may the district court. But the supreme court may order a new trial as to a part of a case; then, why may not the district court? What reason was there for compelling a litigant to go to the supreme court in order to get his rights as to a part of a case, but permitting him to get them in the trial court if the entire case is affected by error?

In considering an appeal from an order granting or refusing a new trial this court has the record before it that was before the court below, and in our decision we say whether or not, upon that record, the court below erred. Since there is nothing in the statute concerning new trials authorizing the conclusion, how could we say, in any case, that the trial court erred in granting a new trial as to the entire case, or an independent part thereof, when, if it had been done otherwise, we would have reversed its rulings and ordered it to proceed according to the order appealed from? Our opinion is that the court below had power to grant a new trial of the issues relating to the property alone, if the statement showed error in the trial thereof which materially affected the rights of plaintiff.

The court found that, at the time of marriage, plaintiff was without property, and that she has not since acquired any by gift, devise, or descent; that, at the time of marriage, defendant owned and possessed, in his own right, valuable real estate and personal property which embraces a

large portion of the property in controversy, and which has yielded large rents, issues, and profits, aggregating about two hundred and six thousand dollars; that defendant exchanged a portion of said real property, so owned by him at the time of marriage, for other real property which he now owns, and a portion he has, since his marriage, sold, and invested the proceeds thereof, together with the rents, issues, and profits, in other property now owned by him; that, since their marriage, plaintiff and defendant have neither jointly nor severally engaged in any profitable or remunerative business out of which any of the money or property in controversy was acquired, and that there is now no common property; that the rents, issues, and profits of the separate property of defendant, owned by him at the time of marriage, accruing since, after deducting therefrom all losses and depreciations suffered by defendant, aggregate more than the total cost of all the property acquired since the marriage, and more than the present total value of all the property in question, the title to which has been acquired by defendant since the marriage; that all the property in controversy, except that which defendant owned at the time of marriage, has been acquired by him by purchase or exchange, part by actual barter or exchange for real property owned by him at the time of marriage, and all the balance by purchase with moneys arising from sales and rents of separate real estate and personal property, tolls arising from separate property, and interest received from loans of moneys that belong to defendant alone; that at the time of marriage, defendant owned a toll road and bridge, collected tolls thereon, conducted the Lake House hotel and a merchandise business therein, cultivated some lands, and had certain moneys at interest; that after the marriage and until March, 1872, he conducted and maintained said toll road and bridge, and collected from tolls about seventy-five thousand dollars net; that plaintiff contributed no labor, advice, or assistance in the operation of said road or bridge, or in the farming business mentioned; that immediately after marriage plaintiff and defendant commenced to reside

at the hotel, where defendant conducted the hotel business until the fall of 1868, when the premises were rented until January, 1870, at which time defendant resumed possession and conducted the business thereof until the summer of 1871; that during all of said times plaintiff resided with defendant, and contributed, by her labor and advice, to the business; that defendant had his board and lodging out of the hotel business, and plaintiff was maintained, and her children by a former husband educated, therefrom; that the crops raised by defendant on his own lands, up to 1868, were either used in the hotel or sold and the proceeds had by him; that in 1865 defendant kept a hotel or eating-house at Meadow Lake, California, for four or five months; that he constructed certain buildings necessary for use in the business, which were afterwards destroyed by fire; that plaintiff labored as a cook and in serving upon the table, and contributed greatly to the business; that there was no profit in the hotel business at either place; that during all of said times defendant was engaged in loaning money at interest, collecting interest money, renting buildings and lands of his separate estate, selling such lands, and investing the proceeds of such interest, sales, and rents in loans, purchases of other lands, and in the construction of buildings, and that, in these operations, plaintiff contributed no labor or assistance; that since 1871 defendant has conducted farming operations on the Lake ranch, consisting of nine hundred and seven acres of improved land, of the value of about forty thousand dollars; that thirty-three acres of this land was acquired by exchange of lands owned by defendant before marriage, and the balance by purchase since marriage.

The evidence is undisputed that three hundred and fifty-four acres of this land was acquired by deed, March, 1870, for a consideration of four thousand two hundred and fifty dollars; one hundred and sixty acres, September, 1871, for eight hundred and fifty dollars; thirty-three acres from Hatch, by exchange; eighty acres by patent from the state, May, 1874, and forty acres, also by patent, Decem-

ber, 1875, both in the name of plaintiff. The court found that this property was the separate estate of defendant, evidently upon the ground that they were paid for out of his individual funds. Large crops have been raised on this ranch, which were fed to stock thereon or sold, and cattle and horses were raised and marketed. Plaintiff and defendant resided on the ranch several years, advised together, and contributed their labor in their respective departments. Plaintiff faithfully performed all the duties of a wife. We deem it unnecessary to state other findings.

The question presented to the court below was whether, in law, the legal title to the whole or any part of the property described in the complaint was in the community or the defendant, and we are called upon to say whether or not the evidence is sufficient to support the findings. Prior to the statute of 1865 (Stat. 1864–65, 239) the property rights of husband and wife were governed by the common law. That statute only affected property subsequently acquired. (*Darrenberger* v. *Haupt*, 10 Nev. 46.) It follows that all property owned by defendant at the date of marriage, as well as that purchased by him, and the rents, issues, and profits of the same up to March 7, 1865, the date of the first statute, belonged to defendant as his separate estate. But it is claimed by counsel for plaintiff that under that statute the rents, issues, and profits of defendant's separate estate, until the passage of the statute now in force, (Comp. Laws, 151,) became common property. The statute of 1865 was passed pursuant to the constitution, which provided that "all property, both real and personal, of the wife, owned or claimed by her before marriage, and that acquired afterwards by gift, devise, or descent, shall be her separate property; and laws shall be passed more clearly defining the rights of the wife, in relation as well to her separate property as to that held in common with her husband." Under a similar constitutional provision the legislature of California passed an act defining the rights of husband and wife, (Stat. 1850, 254,) wherein, like our statute of 1865, it was declared "that all property, both real and

personal, of the wife, owned by her before marriage, and
that acquired afterwards by gift, bequest, devise, or descent,
shall be her separate property ; and all property, both real
and personal, owned by the husband before marriage, and
that acquired afterwards by gift, bequest, devise, or descent, .
shall be his separate property.    All property acquired after
the marriage by either husband or wife, except such as
may be acquired by gift, bequest, devise, or descent, shall
be common property."    But the California statute also
provided that "the rents and profits of the separate prop-
erty of either husband or wife shall be deemed common
property."    This provision was left out of our statute,
although the first part of the section of the California act
containing it was copied *verbatim.*

In *George* v. *Ransom*, 15 Cal. 323, the supreme court
held that the legislature had not power, under the con-
stitution, to say that the fruits of the property of the wife
should be taken from her and given to her husband or his
creditors ; that the sole value of property is in its use.
Counsel for appellant admit the correctness of that decision,
but they say there is no such constitutional provision as to
the property of the husband, and inasmuch as the statute
of 1865 did not make his rents, issues, and profits separate
estate, they belong to the community, because acquired
after marriage, and not by gift, devise or descent.    It is
said, also, that the supreme court of California affirmed
this theory of the law in *Lewis* v. *Lewis*, 18 Cal. 659.    But
it must be remembered that when that case was decided
the statute of 1850, before referred to, was in force, except
as affected by the decision in *George* v. *Ransom*.    It was
the law then that the rents, issues, and profits of the hus-
band's separate property should be deemed common prop-
erty.    If we concede that the legislature might make the
profits of his separate estate common property, still the fact
remains that it did not do so, but on the contrary, ex-
punged the very words of the California statute that pro-
duced this result.

Again, since under the constitution the legislature could

not lawfully make the rents, issues, and profits of the wife's estate common property, in the absence of affirmative words making them such, the presumption is that there was no intention of doing so. Now, the first and second sections of the statute of 1865 must be construed together. If, under the first, the profits of the wife's separate estate belonged to her, then we cannot say that, under the second, they belong to the community. And if, under the first, the profits of her estate belong to her, it cannot be said that a different rule should prevail as to him, for the language is precisely alike as to both. Besides, it would be unfair to take from one what is given to another. And, too, it is evident from section three that the legislature intended that the wife's profits from her separate property should remain hers. It provided that an inventory of the wife's separate property, except money in specie, should be executed and recorded, and thereafter a further inventory should be made and recorded of all other separate property afterwards acquired, excepting money while in specie and unconverted, and excepting the rents and profits of her separate property included in the original or any subsequent inventory, if the same was money, so long as it should remain in specie and unconverted. When the rents and profits of her separate property were converted into property other than money, it was her duty to record an inventory of the same ; but the rents, issues, and profits of her estate, while in specie, belonged to her without an inventory. And, under section five, all property belonging to her included in the inventory, as well as money in specie not so included, was exempt from seizure for the debts of her husband. Thus we find a plain recognition of the wife's right to the rents, issues, and profits of her separate estate. We are satisfied that, under the statute of 1865, the rents, issues, and profits of defendant's separate estate did not become common property. (*Williams* v. *McGrade*, 13 Minn. 51; Wells, Sep. Prop. Mar. Wom., sec. 112; *Glover* v. *Alcott*, 11 Mich. 482; Bish. Mar. Wom., secs. 50, 94, 632, 776.)

It is conceded that property acquired during coverture

presumably belongs to the community. The burden is on the defendant in this case to overthrow this presumption, by proof sufficiently clear and satisfactory, to convince the court and jury of the correctness of his claim, as in other cases. Respecting the amount and character of evidence required to overcome the presumption mentioned, the supreme court of Michigan has expressed our views in *Davis* v. *Zimmerman*, 40 Mich. 27, where it is said : " Some Pennsylvania cases are cited, in which the court has used somewhat strong language respecting the evidence which should be required to make out a gift from husband and wife. Chief Justice Black said, in *Gamber* v. *Gamber*, 18 Pa. St. 363, 366, that a married woman claiming property, must show her right ' by evidence which does not admit of reasonable doubt.' This is a very strong statement, and lays down a much more severe and stringent rule than is applied to other persons. In this state no such distinction is recognized. Convincing proof is required, but nothing more. No doubt the circumstances of the relation, and the facility with which frauds may be accomplished under the pretense of sales or gifts between husband and wife, ought to be carefully weighed in determining whether or not a gift has been made; but, when all are considered, the one question, and the only question, is whether the wife has established her right by a fair preponderance of evidence ; if she has, no court has any business to require more." (And see 2 Bish. Mar. Wom. secs. 136, 138, 140 ; *Tripner* v. *Abrahams*, 47 Pa. St. 229 ; *Seeds* v. *Kahler*, 76 Pa. St. 267 ; *Earl* v. *Champion*, 65 Pa. St. 195 ; *Glover* v. *Alcott*, 11 Mich. 493.)

The court did not err in admitting the testimony of witness Lake to show that the real consideration was other property given in exchange, instead of the money stated in the deeds from Crocker and Osbiston. (*Peck* v. *Brummagim*, 31 Cal. 447 ; *Ramsdell* v. *Fuller*, 28 Cal. 37; *Peck* v. *Vandenburg*, 30 Cal. 11; *Salmon* v. *Wilson*, 41 Cal. 595 ; *Higgins* v. *Higgins*, 46 Cal. 259 ; *Wedel* v. *Herman*, 59 Cal. 516.)

It is admitted that all property described in the complaint,

which was owned by defendant before marriage, remains his. It is equally true that property purchased with, or taken in exchange for, such property is his also, as well as the rents, issues, and profits of his separate estate. But the question arises, what are properly rents, issues, and profits, under the facts proven? The contention in this case comes mainly from a difference of opinion as to the proper solution of this query. The subject is beset with difficulties, which must be met as the cases present themselves, and each must be decided upon its own peculiar facts. Extreme cases may be suggested upon both sides, in which it would be difficult to mete out exact justice by following the theory of either plaintiff or defendant; but such examples are not uncommon in the law, and courts have never considered them sufficient to justify a departure, in an individual case, from well-established legal principles. We are satisfied it is not necessary to prove that property is, in fact, the product of the joint efforts of the husband and wife in order that it may be declared community estate. If it is acquired after marriage by the efforts of the husband alone, but not by gift, devise, or descent, or by exchange of his individual property, or from the rents, issues, or profits of his separate estate, it belongs to the community. Such property is common, although the wife neither lifts a finger nor advances an idea in aid of her husband. She may be a burden and a detriment in every way, or she may absent herself from the scene of his labors, know nothing of his business, and do nothing for him, still it is common. On the other hand, property acquired by either spouse in any one of the ways mentioned in the statute—that is to say, by gift, devise, or descent, or by exchange of individual property, or coming from the rents, issues, or profits of separate property—belongs to him or her, as the case may be, and the other has no more right to share it than a total stranger. After marriage it was defendant's duty to support his wife, but he was under no legal obligation to accumulate community property. He could attend to his separate estate and support his family from that, if he was so inclined.

If common property is acquired, the wife has her statutory rights therein, but she has no vested rights in or lien upon his time or labor. If he is indolent and barely supports the family, or if he spends his time in increasing his separate estate, instead of enriching the community, her remedy is an appeal to his better nature. The law furnishes no aid. And since the law gives to each spouse the rents, issues, and profits of his or her separate estate, it cannot be true that they become common property by reason, simply, of the marriage relation. But the record shows, and the court finds, that the plaintiff assisted, in her department, in carrying on the Lake Hotel business, the Meadow Lake Hotel or eating-house, and the Lake ranch ; and after the old Lake House was destroyed by fire, the men employed upon defendant's toll-road boarded at his private house, and plaintiff cooked and washed for them. She also advised with defendant at times about his business. Do these facts make the profits from the sources just named, if any there were, community estate, provided the property used and out of which the profits came belonged to defendant alone ? Most of the cases to which we shall refer upon this question involve the right of a wife to claim profits arising from the use of her separate estate, as against creditors of the husband, when they have been increased by his labor and skill. There are cases intimating, at least, that in a contest between husband and wife, where the husband has increased the income of the wife's estate by his labor, she might claim the entire product, although she could not do so as against her husband's creditors. (See Wells, Sep. Prop. Mar. Wom. sec. 47; *Hockett* v. *Bailey*, 86 Ill. 77 ; *Wilson* v. *Loomis*, 55 Ill. 355 ; *Skillman* v. *Skillman*, 13 N. J. Ch. 409.) But we think the principles of law that control those cases should govern this. (*Parrott* v. *Nimmo*, 28 Ark. 358.) Such, also, is the opinion of counsel for plaintiff.

*Lewis* v. *Johns*, 24 Cal. 100, shows that wheat raised upon land of the wife was seized under an execution against her husband. He had employed men, pur-

chased seed-wheat, made contracts to be paid out of the crops, superintended the farm labor, and performed some himself.   After referring to *George* v. *Ransom, supra,* the court said :   "That the husband cannot, by any management, supervision, or labor, acquire any interest in the estate itself, is conceded, and, by parity of reason, he cannot acquire any interest in the increase, for that is hers also, and upon the same terms, the latter being a corollary of the former proposition.   There is no magic in the touch or manipulation of the husband, by force of which separate is transformed into community property.   If he acquires, as contended by respondents, any right whatever, as against his wife, by virtue of his supervision and labor, it is not his right in the nature of a lien on the thing supervised, or upon which the labor is bestowed, but merely a right to compensation, and his creditors could only proceed by the process of garnishment.   In the absence of an express agreement to that effect, there is no implied obligation on the part of the wife to compensate the husband for his services, and in either case there would be only an imperfect obligation which neither husband nor his creditors could enforce. The doctrine contended for would banish the husband from the premises of the wife, and deprive her of his counsel and guidance, for his presence there might bring ruin instead of affording protection.''

In *Webster* v. *Hildreth*, 33 Vt. 457, it appears that Mrs. Hildreth, one of the defendants, became the owner of wild land by deed from her father.   Hildreth and wife moved onto the land, and there lived until the suit.   With the help of their children they cleared up a large part of it, erected buildings and made valuable improvements.   The land was originally worth two or three hundred dollars, but at time of suit was valued at twelve or fifteen hundred, the increased value having been in part from the rise of the land in price, and part in the improvements.   Hildreth contributed to the improvements by his labor and money, but during the whole time the title to the land was in his wife.   This fact so appeared of record, and was generally known.   The

plaintiff, having a judgment against Hildreth, levied on seven undivided twelfths of the farm, claiming that the husband's labor, earnings and money had contributed to the improvements, and made up that much of its value. The supreme court held that in the absence of an agreement, in some legal form, that his labor and improvement of the farm should vest in him some interest therein, or entitle him to compensation, he had no equitable claim upon the farm, and could claim nothing for his services, and that creditors had no greater right against the wife's estate than her husband had.

In *Rush* v. *Vought*, 55 Pa. St. 442, the evidence showed that the husband and wife lived on the latter's farm. She took the entire management, but he assisted somewhat, her children doing most of the work. He generally sowed the grain. The trial court charged the jury that "the labor on the farm was bestowed by her husband and his children, and the grain, hay and other crops raised, were the joint products of such labor and the land ; and if the personal property now claimed by the wife was paid for out of the products, the husband had an interest in it. It cannot, therefore, be said to have been purchased and paid for out of the separate funds of the wife." Commenting upon that instruction, the supreme court said : "Thus the sowing of the grain, which was Jacob Rush's chief labor, mingling with the tillage, carried away from Mrs. Rush not only all the products of the soil (hay as well as grain), but the stock purchased with their proceeds, when converted by Mrs. Rush into money or bartered. A deduction which leads to such wholesale destruction of the wife's rights of property cannot be founded in correct principle. The error arose from an oversight of the true foundation of the wife's right. This is not the case of property purchased during coverture, where the price of it, presumptively, if not actually, came from the husband. But here, the title to the products grows out of the title to the land itself. The ownership of the farm carries with it at law, and in equity, the right to its products. No change can take place in the title to the

. fruits of the soil, without the owner parts with his title or possession, or permits its cultivation for the benefit of another. But the labor of others for the owner, though mingling in the production, creates no title to the products. The owner may be a debtor for the labor which tills his soil, or that labor may be given without a required equivalent, or for an equivalent in maintenance, which is consumed in its use ; but this gives no usufruct or ownership in the product of the tillage. It matters not, therefore, whether the labor, when thus rendered, be that of the husband or another; without contract for the product, or cultivation by the husband for himself, it confers no title or usufruct.''

(To the same effect are *Hanson* v. *Millett,* 55 Me. 188 ; *Holcomb* v. *Savings Bank,* 92 Pa. St. 342 ; *Silveus' Ex'rs* v. *Porter,* 74 Pa. St. 451.; *Wieman* v. *Anderson,* 42 Pa. St. 317 ; *Manderbach* v. *Mock,* 29 Pa. St. 46 ; *Hamilton* v. *Booth,* 55 Miss. 61 ; *Bongard* v. *Core,* 82 Ill. 19; *Garvin* v. *Gaebe,* 72 Ill. 448; *Coon* v. *Rigden,* 4 Colo. 283 ; *Russell* v. *Long,* 52 Iowa 250 ; *Dayton* v. *Walsh,* 47 Wis. 117 ; *Feller* v. *Alden,* 23 Wis. 303 ; *Noe* v. *Card,* 14 Cal. 607 ; *McIntyre* v. *Knowlton,* 6 Allen 566 ; *Knapp* v. *Smith,* 27 N. Y. 279 ; *Abbey* v. *Deyo,* 44 N. Y. 348 ; *Gage* v. *Dauchy,* 34 N. Y. 295 ; *Whedon* v. *Champlin,* 59 Barb. 65 ; *Buckley* v. *Wells,* 33 N. Y. 520; *Picquet* v. *Swan,* 4 Mason 455 ; Wells' Sep. Prop. Mar. Wom. secs. 113, 162, 176.)

In the case of *Buckley* v. *Wells, supra,* the property in question consisted of a stock of goods in a country store, of which the wife was the sole proprietor. The husband conducted the business in her behalf in the name of ''E. Smith, Agent,'' and nominally, if not really, for her as his principal. The entire capital was contributed from her separate estate, except money borrowed in the name of ''E. Smith, Agent,'' and the profits accruing from the use of such capital. The business was carried on for several years. The wife took no part in the management of the store. The point was made that the goods belonged to the husband, and were liable for his debts, since his labor entered into and formed

a part of the property and increased its value. The court held that the goods belonged to the wife. In *Abbey* v. *Deyo*, *supra*, plaintiff, the wife, was engaged in the business of buying and selling flour, etc. Her husband was her agent, and as such, bought and sold and carried on the business for her. The decision of the court of appeals was the same as in *Buckley* v. *Wells*. In *Whedon* v. *Champlin*, *supra*, plaintiff, the wife, owned a boat and carried on the business of boating. In *Weiman* v. *Anderson*, *supra*, the proof was clear that the stock of goods in Anderson's store, in January, 1858, became the separate property of his wife by gift from her brother. Those goods were sold and others purchased in her name, so that in November, 1859, when plaintiff levied his execution, issued upon a judgment against the husband, few, if any, articles of the original goods remained. The stock levied on was an entirely separate and distinct stock from that given to Mrs. Anderson, although it was purchased with the proceeds of the former stock. Mrs. Anderson did not do business as a sole trader. Both husband and wife attended to the business. Most of the purchases were made in the name of the wife, but the husband continued to attend to the store. He made sales and received moneys. The Pennsylvania statute then in force declared that property which accrued to a married woman should be owned, used and enjoyed by her as her separate property. The court said : "The use and enjoyment here referred to must be such as are consistent with the nature and kind of property. A store of liquors and cigars cannot be used and enjoyed in the same manner as household furniture. They are merchandise, and it is the nature of merchandise to be sold and exchanged. When, therefore, the statute authorizes married women, to own, use and enjoy merchandise as their separate property, it legalizes trade by them ; it makes them merchants."

In *Manderbach* v. *Mock*, *supra*, the wife bought livery stock on credit, rented a stable, and carried on a livery business in her own name. Her husband and children attended to the stable, taking care of the horses and

vehicles, but she controlled the business. The court sustained her claim to the property. In most of the other cases cited it was held that the title to crops followed the title to the land, although they were produced by the joint efforts of the husband and wife, or by the husband alone, if the wife owned the land. But under our statute the sole question is, whether property claimed by either spouse belonged to him or her at the time of marriage, or has since been acquired by gift, devise, or descent, or has come from the rents, issues, or profits of separate estate. And in this or any other case, if profits come mainly from the property, rather than the joint efforts of the husband and wife, or either of them, they belong to the owner of the property, although the labor and skill of one or both may have been given to the business. On the contrary, if profits come mainly from the efforts or skill of one or both, they belong to the community. It may be difficult in a given case to determine the controlling question, owing to the equality of the two elements mentioned, but we know of no other method of determining to whom the profits belong. In the use of separate property for the purpose of gain, more or less labor or skill of one or both must always be given, no matter what the use may be; and yet the profits of property belong to the owner, and in ascertaining the party in whom the title rests, the statute provides no means of separating that which is the product of labor and skill from that which comes from the property alone. In this case we are not burdened with the only question involved in the case of *Glover* v. *Alcott*, 11 Mich. 480, wherein the court said: " But it does not necessarily follow that because the statute has secured to her (the wife) the income and profits of her separate property, it has therefore authorized her to engage in any and every kind of general business which might be carried on *with it or upon it*, and give her the profits and income of *the business* as well as the property. Here is a *distinct element* entering into the product, beyond that of the income of her separate property."

In that case the only question was whether the wife had

legal capacity to carry on the general business in which she was engaged ; while here, it cannot be doubted that defend-ant had that power. In relation to the decision in the case referred to, as well as in *Glidden* v. *Taylor*, 16 Ohio St. 509, and similar decisions, we content ourselves with a reference to Mr. Bishop's criticism at section four hundred and sixty-five of volume two of his work on the Law of Married Women. The old hotel, with its furniture, including the bar and its fixtures, belonged to defendant. The new one was built from the proceeds of his separate property. Part of the time they were rented, and it is admitted that the rents belonged to him. At other times he carried on the business himself. In either case, if there were profits, they were the result of the ordinary use by him of the property belonging to his separate estate. (*Estate of Higgins*, 3 W. C. R. 358.) Having the hotel, he was obliged to rent it or run it himself. If he could make more from it by one use than another, surely there was no legal incapacity to prevent him from using it in the most profitable way ; and the profits of the business belonged to him, if they came mainly from the property rather than from his personal efforts, or those of himself and wife. Any other conclusion would compel a husband, under certain circumstances, to remain idle, or make him divide profits which the law gives to him alone.

Without further discussion, our opinion is that the rents, issues and profits which accrued from the toll road and bridge, the Lake House and the Lake ranch, belonged to defendant. Such profits, if any there were, came mainly from the ordinary use of his individual property. The Meadow Lake venture was in 1865–66. Prior to that time there had been no community business in the sense that the proceeds thereof belonged to the community. Defendant went there to keep a hotel. Whatever expense was incurred in the beginning must have been borne by him out of his separate funds. He carried on business there five or six months, and during the time built a hotel or boarding house. The record fails to show the extent of the outlay or the amount of business done. We are therefore

unable to say that the profits belonged to defendant. He testified, however, that "the hotel there made no money; we came out about even, owing to the fire." From this it is argued that, prior to the fire, they must have made money, and that if any property was purchased with such profits, it belonged to the community. Defendant advanced money or obtained credit for the business, and received the proceeds. The building of the hotel was as much a legitimate expense chargeable to the business, and to be paid from its proceeds, as was the cost of supplies or the wages of hired help. Defendant had as much right to repay his advances, or satisfy any indebtedness incurred by him for the business, as he had to pay any other demand. The advances were made, or the indebtedness was incurred, for the business, and it is fair and proper that they should be paid from the proceeds. The meaning of defendant's testimony is that, the proceeds of the business were about as much as the entire expense, including the cost of property burned; that by reason of the fire there were no profits; in other words, that the property burned, represented the profits. By reason of the Meadow Lake enterprise defendant at no time had more money to invest in property than he had before engaging in it, or than he would have had if it had not been undertaken. If we are correct so far, it cannot be said that the court erred in its findings as to the balance of the property in controversy.

In view of the result now reached, it is urged by counsel for appellant that, this court may and should order a division of defendant's separate property. After divorce granted to plaintiff, the law imposes upon defendant the duty of supporting her according to his ability and condition in life. The court allowed plaintiff one hundred and fifty dollars a month for herself and fifty dollars a month for the child, and retained jurisdiction to increase the allowance at any time upon proper showing. We deem it unnecessary to decide, in this case, whether or not, upon granting a divorce on the ground of cruelty, courts have power to divest the husband of the title to his separate estate. The division of property, by

the statute, is left to the legal discretion of the trial court, and this court ought not to interfere unless the discretion given has been abused. Upon the evidence before us we cannot so say. It appearing by the records of this court that defendant, M. C. Lake, has died since the taking of the appeal in this case, and that by order of the court, C. T. Bender, administrator of his estate, has been substituted as defendant and respondent in the place of said deceased, the said C. T. Bender, administrator, is hereby substituted herein as party defendant and respondent, and the judgment and order appealed from are affirmed.

HAWLEY, C. J., dissenting:

I agree with the conclusions reached by the court that the court below had the power, and it was its duty, to grant a new trial of the issues relating to the property rights of the parties, if there was any error which materially affected the rights of the plaintiff; that all property owned by the defendant at the time of his marriage, and all property which has since been acquired with funds derived from the rents, issues and profits of such property, and all property acquired by an exchange of property owned by him at the time of his marriage, is his separate property. But I am unwilling to give my assent to the proposition that the profits, if any, derived from the hotel and saloon business, in which the defendant was engaged, would be his separate property. I am of opinion that the profits, if any, made in the hotel and saloon business would belong to the community. There is a distinction that must be kept constantly in view between a business which does not, necessarily, derive its profits from the fact of the ownership of the property in which it is conducted, and a business which depends entirely for its profits upon the fact of the ownership of the property. If the owner rents a house, the money collected for the rent belongs to him because of his ownership of the property. The profits from the property in such a case do not, necessarily, depend upon the efforts or skill of either spouse, although some labor would be

required. If, instead of renting the house, the owner thereof engages in a business which is in a great degree dependent upon the skill and labor of the parties, or either of them, the profits (or a portion of them, at least) realized from that business would be community property.

Several authorities are cited to sustain the proposition that the fact that the property was acquired by the joint efforts of the husband and wife does not necessarily make it community property. This is true with reference to cases where the accumulations of property were derived from conducting and carrying on the farming business, and other business of like character. In such cases it is almost universally held that the crops growing upon and produced from lands which are the separate property of the wife, do not become community property by the mere fact that the husband gave his time, labor, and skill in the production thereof. Why? The reason given is that, in the absence of any agreement to the contrary, the title to the products belongs to the owner of the land; that the ownership of a farm necessarily carries with it the right to the products grown thereon. In such a case the skill or labor of either spouse has nothing to do with the question of the ownership of the crops. It is also held in many cases, upon the same reasoning, that the increase of personal property follows the ownership. In *Rush* v. *Vought* the court of common pleas was of opinion that the fact that the labor on the farm was bestowed by the husband and his children, necessarily gave the husband an interest in the products of the soil; but the supreme court took a different view, and said that the error of the court below arose from an oversight of the true foundation of the wife's right. "This is not the case of property purchased during coverture, where the price of it, presumptively, if not actually, came from the husband. But here the title to the products grows out of the title to the land itself. The ownership of the farm carries with it, at law and in equity, the right to its products. No change can take place in the title to the fruits of the soil without the owner parts with his title or possession, or permits its

cultivation for the benefit of another. But the labor of others for the owner, though mingling in the production, creates no title to the products. The owner may be a debtor for the labor which tills his soil, or that labor may be given without a required equivalent, or for an equivalent in maintenance which is consumed in its use, but this gives no usufruct or ownership in the product of the tillage. It matters not, therefore, whether the labor, when thus rendered, be that of the husband or another; without a contract for the product or cultivation by the husband for himself, it confers no title or usufruct." (55 Pa. St. 443.)

This is the key-note of the entire .decision. It is the reasoning upon which the opinion is based, and the ground upon which the conclusion is reached. The authorities cited are all alike. They declare that the title to the crops follows the title to the land, even if produced by the joint labor of both husband and wife, or by the labor of the husband alone, if the wife owns the land; that the care, control, and management by the husband of his wife's property, and his labor upon it, does not change the title to the land. Thus, it is said, "A husband may devote his time and skill to the management of his wife's property and the products will belong wholly to the .wife, because *they are but the accretions of her property*, and he has a right to give her his labor." (*Hamilton* v. *Booth*, 55 Miss. 62.) The fact that her husband may have done some work about raising the crops "*does not affect her title to the property*." (*Garvin* v. *Gaebe*, 72 Ill. 448.) "The right to the profits and natural increase of tangible personal property is *incident to and results from the ownership*." (*Williams* v. *McGrade*, 13 Minn. 52.) But the principle upon which these and kindred cases were decided does not apply to cases where a business is conducted, the profits of which are derived by means of the joint labor and skill of the husband and wife, or either of them, independent of the title to the property. It does not apply to a business carried on in the wife's name with her money, where "the profits arose in part from his time and skill." So held in relation to the business of

buying and shipping grain and stock, (*Wortman* v. *Price*, 47 Ill. 23,) the lumber business, (*Wilson* v. *Loomis*, 55 Ill. 355,) and the foundry and machine business, (*Glidden* v. *Taylor*, 16 Ohio St. 509.)

In *Wortman* v. *Price* the court said: "We have no hesitation in saying that if she advances capital to her husband, with which he engages in trade, such capital and its fruits in the business will be subject to the husband's debts, even though he may claim to be acting as his wife's agent, and doing business in her name." Referring to a former case, where the court had said the husband might act as agent for his wife, the court said this simply meant "that he may act as her agent for a particular transaction, or, generally, for the control of her property or the investment of her funds. He may lease her property and collect the rents, or invest her money, or change the character of her investments, if authorized by her, and he may do this without subjecting her property to his debts. But we did not say * * * that she could make him her agent for the purpose of engaging in trade, to be managed by him, and to which all his time and energy might be devoted, and that the property embarked in such trade and its profits would be beyond the reach of his creditors. Such is not the law."

In *Glidden* v. *Taylor* the court said: "Disrobing, then, the transactions of all matters of form, and looking at the naked facts, it appears that Mr. Taylor, being skilled in the business, established a manufactory for the manufacture and repair of various kinds of machinery, which was conducted under his sole charge for several years; that under his energetic, skillful and prudent management the business was profitable; that, after applying so much of the profits as was necessary to keep up the establishment, he applied the remainder to the purchase, in his wife's name, of the real estate described in the petition; * * * that the entire accumulations from the business, above expenses, amounted to six or seven thousand dollars; and that in establishing and conducting the business he had used the money of Mrs. Taylor, his wife. The foregoing is the sub-

stance of the transaction; and the question is whether the title of Mrs. Taylor to the property thus acquired is, in equity, unimpeachable by the plaintiffs, who are antecedent creditors of the husband. The property in controversy can, *in no just sense*, be said *to be either the income, increase or profits* of the money given to Mrs. Taylor.''

In New Jersey, the court, in deciding that the wife is entitled to the rents and products of her farm or other property, and the products of the labor of herself and minor children, distinguishes these from the proceeds of trade carried on by her with her separate property. · (*Johnson* v. *Vail*, 14 N. J. Eq. 429; *Quidort* v. *Pergeaux*, 18 N. J. Eq. 480.)

In *Quidort* v. *Pergeaux* the court said: ''The law was intended to protect the property and earnings of a married woman, and not the property or earnings of her husband, against his creditors; and when, as in this case, they mix up the earnings of the wife with those of her husband, so that they cannot be separated, the husband cannot make a clear, distinct gift of her own earnings to the wife, and they remain, as at common law, his property.''

Numerous other cases might be cited, but the above are sufficient to show that a distinction, such as I have stated, exists. This distinction should not be lost sight of in applying the principle of law to the special facts of the case. The profits, if any, of the hotel and bar business would come in part from the fact of ownership of the property in which the business was conducted; but the success of the business would, in a greater degree, depend upon the tact, time, skill, labor, and efforts of the husband or wife, or both. In my opinion, the evidence in this case does not justify the findings of the court that no profits were realized from the hotel and saloon business conducted by the defendant and his wife. It is true that the defendant testified in general terms that the Lake House, as conducted by him, '' did not pay expenses;'' that ''the hotel did not make anything.'' Why? When the testimony is carefully reviewed, it will be ascertained that the hotel business, in the

opinion of the defendant, was conducted for the benefit of his toll-road, and hence, in his estimation of receipts, he gives the toll-road, instead of the hotel, the credit of all the profits. With reference to the property purchased after the marriage, the defendant testified as follows : "In making purchases of property which I have purchased since my marriage with plaintiff, I did not borrow any money, but used my own money." He further testified that when they were married he was possessed of considerable property, which afterwards became of great value, and from which he derived large sums of money, and that at the time of his marriage his wife had nothing but her clothes. The inference to be drawn from this testimony is that the property purchased after his marriage was acquired by his separate means ; but it is questionable, to say the least, whether it is, independent of the question of profits in the hotel business, of so positive, clear, and convincing a character as to overcome the presumption of the law that all property acquired during coverture is community property.

In *Schmeltz* v. *Garey*, 49 Tex. 60, the court decided that the mere fact that at the time of the marriage the husband had considerable money and the wife had nothing; that after the marriage the parties lost money—without explicitly tracing the purchase money or consideration to the separate property of the husband—will not rebut the statutory presumption that property purchased during the marriage is community property. *Winter* v. *Walker*, 37 Pa. St. 156, is substantially to the same effect. But, be that as it may, it is apparent that defendant's testimony in this respect is based upon his assertion that the hotel business did not make any money, and hence his testimony upon this point must be considered subject to the question whether or not there were any profits derived from the hotel business. I am of opinion that the testimony shows that there might and would have been a profit in that business if it had been credited with the business it transacted. If there were any profits legitimately arising from the hotel and saloon business, the money was mingled with the receipts from the toll road,

and from the rents, issues and profits of defendant's separate property, and the receipts of money were so blended together as to prevent the community property, or the amount of it, from being traced. It would, therefore, be impossible to tell what proportion of the community funds, or the funds of defendant's separate estate, was thereafter used in the purchase of other property, and the result would be that the property so purchased should be treated as community property.

In *Meyer* v. *Kinzer*, 12 Cal. 251, the court said : "The statute proceeds upon the theory that the marriage, in respect to property acquired during its existence, is a community, of which each spouse is a member, equally contributing, by his or her industry, to its prosperity, and possessing an equal right to succeed to the property after dissolution, in case of surviving the other. To the community all acquisitions by either, whether made jointly or separately, belong. No form of transfer or mere intent of parties can overcome this positive rule of law. All property is common property, except that owned previous to marriage, or subsequently acquired in a particular way. The presumption, therefore, attending the possession of property by either, is that it belongs to the community ; exceptions to the rule must be proved. * * * This invariable presumption which attends the possession of property by either spouse during the existence of the community, can only be overcome by clear and certain proof that it was owned by the claimant before marriage, or acquired afterwards in one of the particular ways specified in the statute, or that it is property taken in exchange for, or in the investment, or as the price of, the property so originally owned or acquired. The burden of proof must rest with the claimant of the separate estate. Any other rule would lead to infinite embarrassment, confusion and fraud. In vain would creditors or purchasers attempt to show that the particular property seized or bought was *not* owned by the claimant before marriage, and was *not* acquired by gift, devise or descent, or was *not* such property under a new form consequent

upon some exchange, sale or investment. In vain would they essay to trace through its various changes, the disposition of any separate estate of the wife, so as to exclude any blending of it with the particular property which might be the subject of consideration."

I am of opinion that the judgment and order appealed from should be reversed.

By the Court, LEONARD, J., on rehearing :

A rehearing was granted in this case upon that portion of the decree directing the payment of one hundred and fifty dollars monthly, to plaintiff, during her lifetime, or so long as she should remain unmarried, and making the same a charge and lien upon certain real estate, the separate property of the deceased, M. C. Lake ; and in the order we invited argument touching the correctness of the decision in *Wuest* v. *Wuest*, 17 Nev. 221.

In that case we held that, under the statute and upon the facts, the court did not err in awarding all the property of the husband, of about the value of one thousand five hundred dollars, to the wife for her support. There was nothing in the record showing the value of the use of the property, or that its use would support her. The utmost extent of the decision was to the effect that, in an action of divorce for extreme cruelty, the court may award all of the guilty husband's property to the wife, if it is necessary for her support. That decision does not conflict with our conclusions in this case, and it is, therefore, unnecessary to consider it further.

It is the law of this case that, all the property described in the complaint was the separate estate of Lake. It came mainly from the property owned by him before marriage, although it was increased by the labor and skill of both spouses. In law the property was acquired through him, and in disposing of it, he was entitled to a decree appropriate to cases where an innocent wife obtains a divorce on account of the cruelty of her husband, where there is no community property, but a large amount of separate prop-

erty belonging to him. The facts that both plaintiff and Lake labored hard, and that the result of their labor was an increase of the latter's separate property would not have justified the trial court in making a disposition of the property different from what might have been made if there had been no increase on account of the labor of one or both, save that, in providing for her support, the facts mentioned, with others, were proper subjects for consideration.

It is not claimed that, under the statute, the court was *obliged* to award to plaintiff a portion of the property in question, or a sum in gross ; but it is urged that the property could have been divided, that it ought to have been, and that in making the order for a monthly payment of one hundred and fifty dollars, the court abused its discretion. A close examination of our statute touching the division of property in divorce cases enables us to realize the truth of Mr. Bishop's remarks when he says: "The popular ignorance, even in the legal profession, of the law of marriage and divorce, has, in times not long past, been so dense as almost to exclude from the legislation on this subject its proper forms. Largely the statutes contain expressions and provisions of whose meanings, and especially of whose consequential effects, their makers pretty certainly had no clear idea whatever. Instead of consistency and verbal propriety, they abound in absurdities. They are often a chaos." (Bishop on Marriage and Divorce, vol. 1, sec. 89.) Still it is our duty to interpret these laws as we find them, according to well established rules.

In the present case there are two rules of great importance, viz.: All the statutes upon the subject in hand must be construed together as parts of one whole ; and when there are general and specific provisions in a statute which are apparently conflicting, the latter, as a rule, qualify and limit the former. Says Mr. Bishop in his valuable work on Written Laws, at section sixty-four : " Where there are words expressive of a general intention, and then of a particular intention incompatible with it, the particular must be taken as an exception to the general, and so all parts of

the act will stand.    And, as a broad proposition, general
words in one clause may be restrained by the particular
words in a subsequent clause of the same statute.    This
doctrine applies even to statutes enacted at different dates.''
And see sections 112 a, 112 b and 156, same volume.

We do not deem it necessary to consider what would have
been a proper construction of sections twenty-five and
twenty- seven of the statute of 1861 in relation to marriage
and divorce, prior to the statutes of 1865 and 1873 defining
the rights of husbands and wives, and prior to the amend-
ment of section twenty-seven in 1865.    (See Stat. 1861, 98 ;
Stat. 1864–5, 239 ; C. L. sec. 151, *et seq*, and sec. 220.)

It is true that when the statute of 1861 was passed the
common law in relation to husbands and wives was in force,
and counsel for appellant insist that sections twenty-five and
twenty-seven should now receive the same construction that
should have been placed upon them prior to the passage of
the statutes defining the rights of husbands and wives.
Our opinion is that they must be construed according to
our present condition, and as much as possible in harmony
with all laws affecting the subject under consideration.

It is just as much the duty of courts granting divorces
now, to ''make such disposition of the property of the
parties as shall appear just and equitable,'' as provided by
section twenty-five, keeping in view the limitations placed
upon that section by section twenty-seven, and by section
twelve of the act defining the rights of husbands and wives,
as it was before the community system was adopted ; but
in making such disposition, consideration must be given to
our altered condition.    For instance, section twelve of the
statute of 1873 defining the rights of husbands and wives
provides that, ''in case of dissolution of the marriage by
decree of any court of competent jurisdiction, the commu-
nity property must be equally divided between the parties,
and the court granting the decree must make such order
for the division of the community property, or the sale and
equal disposition of the proceeds thereof, as the nature of
the case may require ; *provided*, that when the decree of

divorce is rendered on the ground of adultery or extreme cruelty, the party found guilty thereof is entitled to such portion of the community property as the court granting the decree may, in its discretion, from the facts in the case, deem just and allow; and such allowance shall be subject to revision on appeal in all respects, including the exercise of discretion, by the court below."

It is evident that the section just quoted controls the disposition of the community property, although section twenty-five has not been amended or repealed in terms.

And if it is necessary to do so, in order to make a just and equitable disposition of the property of the parties, it is equally incumbent upon courts to consider the fact that now all property of husbands and wives is held in common or belongs solely to one or the other.

The property in question having been the separate property of Lake, section twelve above quoted was inapplicable, and the power and duty of the court below depended upon sections twenty-five and twenty-seven. (C. L. 218, 220.)

Sections twenty-five and twenty-seven are as follows :

SECTION 25. "In granting a divorce the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the condition in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children.   *   *   *"

SECTION 27. "When the marriage shall be dissolved by the husband being sentenced to imprisonment, and when a divorce shall be ordered for the cause of adultery committed by the husband, the wife shall be entitled to the same proportion of his lands and property as if he were dead; but in other cases, the court may set apart such portion for her support, and the support of their children, as shall be deemed just and equitable."   *   *   *

This section was amended in 1865, when it was changed so as to read, "but in other cases the court *may* set apart," etc., thus giving the court wider discretion than it possessed under the original section.

It may be admitted for the purposes of this case, as claimed by counsel for appellant, that under section twenty-five alone, it might be held that the legislature intended its application to all property rights existing in either spouse at the time of granting the divorce; but section twenty-five is limited by section twenty-seven, and the result is that, in cases like the one under consideration, the former, which expresses the general intention of the legislature, must give way to the latter which expresses the legislative intent in specified cases. (See Bishop on the Written Laws, above cited.) It was the court's duty to make a just and equitable disposition of the property, but in so doing it had to be governed by section twenty-seven, because it was just such a case as that section made special provision for. It would hardly be claimed that, when the marriage is dissolved by the husband being sentenced to imprisonment, or for his adultery, the court could award the wife either more or less of his property than she would be entitled to receive if he were dead. Then why can it be said that, "in other cases," the court may do more than the statute says may be done? When the statute declares that in case of a divorce for extreme cruelty the court "may set apart such portion of his property for her support and the support of their children, as shall be deemed just and equitable," what authority exists for awarding more?

It will be noticed that the word "support" is used in the same sense in relation to the wife and their children. Certainly the legislature did not intend to set apart or award his property to the wife for their children, or to the children direct, except such as might be proper and requisite for their support, including education, during their minority. Indeed beyond that there was no legislative power. (*Fitch v. Cornell,* 1 Saw. 170.)

In our opinion the intention to limit the disposition of his property to her proper support in cases like the present is equally manifest.

If the statute provided only that the court might set apart so much of the husband's property as might be

necessary and proper for the education of their children, it could not be held that any sum beyond what might be needful for the purpose mentioned could be taken from him.

It was the court's duty, then, to set apart such portion of the property in question for appellant's support as under the circumstances was just and equitable. If it did so, its discretion was not abused, and this court has no right to disturb the order. If it did not, our duty is to see to it that the law is carried out in letter and spirit. "Support" is a word of broad signification. It includes everything, necessities and luxuries, which a person in appellant's situation is entitled to have and enjoy. Upon receiving a divorce on account of Lake's misconduct, she is entitled to a support from his property during her life, or so long as she shall remain unmarried. (*O'Hagan* v. *Executor of O'Hagan*, 4 Clarke (Iowa) 516 ; C. L. sec. 220.)

An order directing the payment of a specified sum, monthly, and making it a charge and lien upon real estate of Lake is tantamount to setting apart so much of his property. That amount is appropriated to her use for her support. Conceding that specific property might be set off and awarded to her in fee, if such an order was necessary for her support, it does not follow that it must or ought to be done in this case. At any rate, admitting that the husband may be divested of his title in a proper case, there is nothing before us to show that appellant's support is less secure, according to the method adopted by the court, than it would have been if the aggregate amount and value of her allowance had been set apart to her in specific property. No complaint is made because the property securing the allowance is insufficient.

In proper cases the statute of Illinois permits the court to decree a sum in gross for alimony or a part of the husband's real estate in fee to the wife. Yet, in several cases where such was the method adopted, the decree was reversed.

In *Ross* v. *Ross*, 78 Ill. 404, the court said : "The mode of allowance of alimony in vesting the fee of real estate in

the wife is objectionable. While such practice has, in some instances, been sanctioned by this 'court, it has been under special circumstances. In *Von Glahn* v. *Von Glahn*, 46 Ill. 136, and *Keating* v. *Keating*, 48 Ill. 241, such practice was disapproved of, and it was said, that unless there are special reasons to the contrary, an annual allowance, to be held under the control of the court, is the better mode of decreeing alimony. In the latter case the decree of the lower court, giving the complainant the fee of certain real estate, instead of a life estate or an annuity, secured upon the property, was reversed, the court remarking : 'If the property was not bought with her (complainant's) money, there was nothing in the case calling for a divestiture of the fee.' "

There are many cases where the decree has been reversed because the allowance was too great or too small, but we have been unable to find one where it was reversed because a proper monthly or yearly allowance was given instead of a sum in gross or a part of the husband's estate in fee.

There is another reason why the method adopted in this case is the better one. Appellant may live many years or few. The court has no method of ascertaining the number with any reasonable accuracy, and consequently it is impossible to know what amount or value of property she is justly and equitably entitled to receive for her support. (See also, *Robbins* v. *Robbins*, 101 Ill. 421 ; *Dinet* v. *Eigenmann*, 80 Ill. 274, and *Russell* v. *Russell*, 4 Greene (Iowa) 28.)

It remains to consider whether, from all the facts, the court properly exercised its discretion in fixing the amount that appellant ought to receive for her support. Appellant and Lake were married in September, 1864. She was a widow with three children at the time, and about twenty-six years of age. She is now about forty-seven. She had no property—but for more than fifteen years she worked hard, and performed faithfully the duties of a wife. When she married Lake she was strong and healthy, but at the time of the trial she testified that the hard work she had

done had prematurely enfeebled and aged her. She has one child by Lake, a son aged about ten years.

The record shows, and the court found, that Lake was worth over two hundred thousand dollars, and that his net income was seven thousand two hundred and thirty-two dollars a year. In law this property was Lake's, but during the fifteen years of their married life, she contributed her services and co-operated with him in the manifold enterprises undertaken by him. Early and late she toiled for him, year in and year out. At the time, or a little before, the complaint was filed, Lake purchased a two-story hard-finished dwelling house in Reno, known as the Marsh residence, for a home for appellant and himself, at an expense of six thousand dolllars.

In his answer he averred that he was ready and willing to provide appellant and their son, Charles, with that home, and continue to provide them with all the necessaries and comforts of life. During the pendency of the suit he lived at the Lake house, and in his answer offered the Marsh residence, with servants and necessaries and supplies, to appellant, during the pendency of the suit. In addition to the Marsh residence, Lake owned the Lake ranch, of the value of forty thousand dollars, whereon was a valuable residence, a two-story frame house, well furnished with carpets, pictures, black walnut sets, etc. Appellant with Lake lived on the ranch from 1871 to 1879. She superintended the building of the ranch house during Lake's absence in the east.

Lake testified that Mrs. Lake did a good deal of work, waited upon the table, did chamber work, but that for a year and a half before the suit she had a phaeton and horse at her disposal and a man to hitch it up, and went whenever she pleased. Appellant is not devoted to society and her habits are economical. The testimony establishing the fact of Lake's extreme cruelty to appellant is not before us, and we are unable, therefore, to state, specifically, the acts committed. That they were sufficient, however, to justify the court in granting a divorce is not disputed. Appellant is

the injured party and she has a strong claim upon the court. She is entitled, at least, to be as well supported during the remainder of her life, as she ought to have been, and was, prior to her application for divorce. She had a good house well furnished then, and is entitled to it now. She had, and ought to have had, servants, a horse and carriage, the necessaries, and many of the luxuries, of life. Lake was able to furnish these things, and, after her long and laborious married life, she ought to have enjoyed, and, but for his misconduct, would have enjoyed, the comforts of home and affluence. That she can exist upon the allowance made, or even less, we are well aware, but we are now convinced that she is entitled to receive, and ought to have, more. When the divorce was granted she had nothing. Her home was taken from her, and for another she could look only to the generosity of the law. It is impossible to lay down a rule that should govern courts in cases like this, except that they should consider all the circumstances surrounding the parties, including, besides those mentioned in the statute, the financial condition of the husband and the requirements of the wife; and to the extent of her support, she should not be left to suffer, pecuniarily, for having been compelled, by his ill conduct, to seek a divorce.

Counsel for appellant say, and quote Bishop on Marriage and Divorce, volume two, section four hundred and eighty-two as authority, that she is entitled to be placed in as good situation as to property, as if death, instead of divorce, had broken the marriage bond. Mr. Bishop does say : " If, on this divorce, decreed in favor of the wife, the statutes of the state will permit—and if they have not, and as far as they have not, given her, who, on the death of the man, will not be his widow, substantially the rights of a widow in his property—the court should increase the annual sum which on the score of maintenance it deems she should receive, by what will place her, as to property, in as good situation as if death, instead of divorce, had broken the marriage bond."

We have great respect for Mr. Bishop, but must be gov-

erned by the statute, as he would be, if sitting in our place. Under our statute, upon dissolution of marriage, common property is divided equally between the parties, except when the divorce is granted for adultery or extreme cruelty, when the party found guilty shall receive such portion as the court may, in its discretion, deem just and allow. This is upon the theory that the common property is acquired by the joint efforts of the parties and should be divided equally between them, unless one of them has forfeited the right by committing an act of adultery or extreme cruelty, in which case the court may divide the property according to its legal · discretion.    (C. L. 162.)

When the divorce is granted on account of the adultery of the husband, and when marriage is dissolved by the husband being sentenced to imprisonment, as before stated, the wife shall receive the same proportion of his real and personal property as if he were dead ; *but in other cases,* the court may set apart such portion *for her support and the support* of their children, as shall be just and equitable.    (C. L. 220.)

It is too plain for argument that, the legislature intended to take all discretion from the court in the two cases first mentioned, and "in other cases," to limit the exercise of its discretion to the setting apart of such portion of his property as might be deemed just and equitable, *for her support and the support of their children.* Our conclusion is that, the monthly sum of two hundred and fifty dollars was and is a just and equitable amount to be set apart from Lake's property for the support of appellant, in addition to the amount awarded for the support of the infant son, Charles.

The cause is remanded with instructions to the court below to modify the decree herein by inserting said sum of two hundred and fifty dollars as the sum to which appellant was and is entitled to be paid and shall be paid, monthly, from the date of the decree, by M. C. Lake or his personal representative, and by making said sum a charge and lien upon other real property in addition to that described in the

decree, if it shall appear to the court that the property already charged was insufficient to secure full and prompt payment, monthly, of said sum of two hundred and fifty dollars; and the decree so modified is affirmed.